JESSEE BARTLETT'S HEIRS v. MARY A. HUBERT.

Where a surveyor, in making a survey upon a river, the main course of which was south, after meandering the river, commenced thereon and ran west, south and east, marking the lines and calling for certain bearing trees at the back corners; and finding that the survey did not contain enough land, simply extended the lower line four or five hundred varas, and set a stake in a dogwood thicket, for a corner, but marked no bearing trees, and made no change in the field-notes, except as to the length of the side lines, permitting the calls for bearing trees, and the back corners to remain as at first made, and not defacing the marks of the back line or the back corners as first made; and afterwards another surveyor, in making another survey in the rear of said survey and above it, surveyed to, and called for, the back line as originally marked, which he supposed to be the true line; and grants were issued upon both surveys; it was held that the first granted and those claiming under him, were bound by the back line as marked upon the ground.

Where the plaintiff and defendant deraigned their titles from different grants by the Government, the question being one of boundary, and there being no circumstance requiring notice from the plaintiff to the defendant, evidence to the effect that the plaintiff gave the defendant notice of his claim about the time when the latter purchased, is irrelevant.

Where the issue related to the boundary of two grants from the Government, and the proof was clear that the line claimed by the defendant was the true boundary, it was held that evidence offered by the plaintiff, to the effect that the original grantee from whom defendant purchased had, about the time of his sale to defendant, pointed out to defendant, as the true boundary, the line claimed by the plaintiff, was properly excluded as irrelevant; but see what is said as to the question being leading and the answer irresponsive.

The rule that the lines marked on the ground will control course and distance, applies where the surveyor after running and marking the lines and corners of a survey, and finding it too small, seeks to enlarge it by extending the lines without making corresponding marks upon the ground, or defacing the marks first made, so far as inapplicable to the survey as enlarged, or noting he change in the field-notes; at all events, where subsequent surveyors are misled by the marked lines, and abut their surveys thereon, and the controversy arises after patent.

Appeal from Washington. Tried below before the Hon. R. E. B. Baylor.

Bartlett  v.  Hubert.

Trespass to try title, by the heirs of Jesse Bartlett against. Mary A. Hubert.  In 1824 Samuel Miller received a grant for a league of land on the west side of the Brazos river, at the mouth of New Years creek, and conveyed the same, in August, 1837, to Bartlett.  The field-notes of said grant were as follows :

Beginning at the Brazos river, at the upper corner of the league of John Elam, which is a mound at the distance of eight varas from an elm, S. 40 ° W., and six varas from another elm, N. 30 ° W. ; thence 3543 varas* west to a mound at the distance of 4 varas from a cedar, S. 20 ° E., and 6 varas from a pecan, 45 ° W. ; and thence N. 5000 varas to another mound ; and thence E. 7310 varas to the Brazos river, to the lower corner of William Gates' league ; thence with the meanders of the river to the place of beginning, comprehending one league of land, bounded on the east by the Brazos river ; on the south by the league of John Elam ; on the north by the league of William Gates ; and on the west by vacant land.

In 1831 Adam Lawrence received a grant of a quarter of a league, and in October, 1837, conveyed the same to F. W. Hubert, the husband of the defendant.  The field-notes of said grant were as follows :

Situated upon New Years creek, and adjoining the lands of Samuel Miller and Gibson Kuykendall, and from an elm which serves for a mound, which is situated upon the right bank of said creek, at the mouth of Little Cedar creek, run a line west 300 varas to a mound ; and thence south 5430 varas to the northern line of Gibson Kuykendall's land, to a mound ; thence north 80 ° east, and following Kuykendall's line 1330 varas, to Miller's west-end line ; thence north, following Miller's said line, 3675 varas, to the north-west corner of Miller's land ; thence

---

* So in the transcript; but see report of same case in a former trial, (9 Tex. R. 100,) where this number is stated as 3143, which is more consistent with other testimony in the case, although not sufficient to embrace the proper quantity of land.—REPS.

east following the northern line of Miller's league, 847 varas, to New Years creek ; thence with the meanders of said creek to the place of beginning ; comprehending one quarter of a league of land.

From the beginning corner of the Miller league to the mouth of New Years creek, say 3000 varas, the main course of the river was north ; and from the mouth of New Years creek to the upper corner of said league, the main course of the river was east north east. The main course of New Years creek was north west. The mouth of Cedar creek was about 2500 varas from the point where the upper line of the Miller league crossed said creek. These particulars, taken in connection with the field-notes, will enable the reader to make a diagram of the two surveys, accurate enough for the purposes of this report.

It will be perceived that Lawrence lay in the rear of Miller, and called for the back line of Miller. The issue in this suit related solely to this boundary line, running north and south, and the quantity of land in dispute was about 320 acres.

The facts and evidence were as follows :

Bartlett Sims, for plaintiffs, testified that he was an authorized surveyor in 1824, and made the Miller survey ; that he meandered the river on the east side before he made said survey ; that after meandering the river, he commenced at the Gates' corner (the upper corner of Miller's survey,) and run all round what he supposed to be the whole league of land, but that in closing the survey he found that there was not a sufficient quantity of land enclosed within the lines ; that he then commenced at the lower corner and extended the line 400 or 500 varas further west, and then made a call for the back line, to correspond, but did not run it ; that he did not recollect the corner trees ; that he marked the extension of the lower line ; that he ran it through prairie, so that there was not much marking to do ; that he stuck down a stake in a swamp-dogwood thicket, in the edge of a prairie for the south west corner, and did not mark any bearing trees, that he could

recollect of ; that he did not run or mark the extension of the upper line, nor the back line corresonding therewith ; that the bearing trees called for in the field-notes, at the N. W. and S. W. corners, must be the calls of the corners as first made ; that he thought the error was in not erasing the call for bearing trees at the corners as first made, when corrected ; that the back line furthest west was the true boundary of the Miller league.

Horatio Chrisman, for defendant, testified that he had been a Public Surveyor in the time of the colony, and made the original survey of the Adam Lawrence quarter of a league ; that he first surveyed these quarters of a league for Gibson Kuykendall, which lay partly in the rear of the Miller league, at the lower end of the latter ; that running round from below, he established the N. W. corner of the Kuykendall, and from his calculations he found how far he would have to run east to intersect the Miller survey, which had been made by Sims ; he then run east the distance at which he ought to have intersected the Miller survey, and at this point made Kuykendall's corner ; that before establishing this corner, he looked for the line of Miller's survey, but could not find it. Witness stated that in making the survey for Adam Lawrence's quarter, he commenced at the mouth of Little Cedar creek, and meandered down New Years creek, until he intersected the north boundary line of the survey of Miller's league, which had been previously made by Bartlett Sims ; he then followed the Miller survey west until he came to the N. W. corner of Miller's league ; that the north line of the Miller survey was plainly marked, when he followed it, between New Years creek and the N. W. corner, and agreeing with the field-notes, of the Miller league, which had been furnished him from the Land Office ; from this corner there was no line running west ; but from this N. W. corner of Miller's survey he followed a plainly marked line due S., far enough to ascertain that it was the western line of the Miller league. Witness then went to

where he had commenced the survey at the mouth of Little Cedar creek, and having the meanders of New Years creek, and the distance from the point where Miller's north line crossed New Years creek to the N. W. corner of Miller's survey, being ascertained by his measurement, and having Sims' call for the course and length of Miller's western line, and likewise having the course and distances of the surveys lying south of the survey he was then making ; he then made his calculations for the Lawrence survey, and from the mouth of Little Cedar creek run west a sufficient distance, and made the N. W. corner of Lawrence's survey, from which he run south to Kuykendall's line, where he made the S. W. corner of Lawrence's survey, and stopped : it not being necessary for him to run again the western line of the Miller survey, which had been run by Sims, and the north line of the Kuykendall survey, which had been run by himself ; but calling to run with the lines of those two surveys, he closed the survey.

D. Parker, for plaintiffs, testified that he was the County Surveyor of Washington county ; that by order of Court he had surveyed the Miller league, and returned a plot and field-notes of his survey ; (which was in evidence ;) that he commenced his survey at the S. E. corner of said league, on the Brazos river, where he found the course as described in his field-notes ; that he run west on a plainly marked line—marks having the appearance of an old survey—2680 varas, where he found trees marked as an old corner ; one a cedar and the other a pecan ; those trees, from their marks, seemed to be bearing trees, but he found no stake or mound ; he then continued 3300 varas ; to find this distance, he first went to a hackleberry, said to be Gibson Kuykendall's corner, and run south ; and the two lines intersected at the said distance of 3300 varas, which is in a field and no corner found. From this point to said hackleberry there are but few marks on the line ; distance, as stated in his field-notes, 1325 varas ; and from this point—the hackleberry—he found no line running north.

He then returned to the cedar and pecan aforesaid, which had the appearance of the trees described in the field-notes, by which he run out the league ; and from this corner—at the cedar and pecan—he found an old line plainly marked, running due north, which measured 4900 varas, where he came to the end of the old line, and found an elm and a cedar marked as bearing trees, which were also named as N. W. corner of the Miller league in the said field-notes, by which he made his survey. He examined and could find no line from this point running west, but he found a line running east, which he did not measure, but called for the length of said line running east, from the measurement of O. H. P. Garret, who had previously run said line.

Defendant proved that the lines of the Lawrence survey were plainly marked, (counting as one the line first run and marked by Sims as the back line of the Miller survey,) but it appeared that part of the south line, that is from Kuykendall's corner to the line first marked by Sims as Miller's back line, was marked in 1843, by Nathan Clampet, then County Surveyor, surveying for F. W. Hubert. The Miller survey, if bounded by the back line first marked by Sims, would only contain about 3900 acres ; the Lawrence survey, as claimed by the defendant, would contain about a quarter of a league.

Gibson Kuykendall testified, that he was along when the original survey was made ; and he understood at the time, that his N. E. corner was on Miller's back line ; that they marked a small hackleberry as a bearing tree, for said corner, in the prairie, near the cedar brake. It was in proof that the N. W. corner of the Miller league, as first established by Sims, was a few varas within the defendant's field.

The following instructions were asked by plaintiffs, and all given except the 4th and 7th.:

1st. That unless they believe the inner or eastern one of the two lines was marked and adopted by the surveyor, as the western line of Miller's league, they are not bound or authorized to adopt it.

2nd. That if the jury believe from the evidence, that Sims made a mistake in surveying the Miller league, he had the right and it was his duty to correct it.

3rd. That the diagram submitted to the jury is competent to show the true situation of the lands in dispute, and it is competent for the jury to compare the agreement of the surrounding surveys, to come to a correct conclusion as to which is the true line, and that the corresponding calls of the surrounding surveys are competent evidence.

4th. That if the jury believe from the diagram, that the line beginning at No. 1 and running to No. 3, corresponds with the calls of Miller and Kuykendall, and that the line from 1 to D corresponds with Miller's and Elam or Bartlett's survey, and that the line from 3 to 8 corresponds with Miller's and Kuykendall's surveys, but that the line from 1 to 2 disagrees with all or many of these, it is a circumstance that may be taken into the account to determine that the outer one is the true line.

5th. That unless there is testimony to show it, the jury have no right to presume that there is vacant land between the surveys. That the law required that there should be none left. That the presumption is that the surveyor pursued the law.

6th. That the figure or shape of the survey can not be altered, unless the proof shows the necessity for it.

7th. That the deed from the Government to Adam Lawrence, and that from Lawrence to Hubert, having Kuykendall's corner on Miller's line, for the corner of the land, of defendant, if that corner is identified, you can not extend the line of Lawrence or Hubert further east than that of Kuykendall.

The following instructions were given at the request of the defendant :

1st. That the plaintiff must recover on the strength of his own title, and must show that the land claimed is included

within the lines established by the surveyor, when the survey was made.

2nd. That the lines actually run and the corners actually made must govern the survey, whether it corresponds with the lines called for in the grant or not, or whether the land included in the grant is too great or too small.

3rd. If Gibson Kuykendall's survey was made after the Miller survey, the lines or corners of the Kuykendall survey can have no influence over the Miller survey.

4th. That the marked lines and corners of Miller's survey govern and control, without regard to any effect they may have on the quantity or shape of the Miller league.

5th. That by the law it was made the duty of the surveyor to mark the lines and corners of all surveys, and if the surveyor made a mistake in the first survey, it was his duty to mark the line as corrected ; and if he failed to mark the lines and corners as corrected, the plaintiff can not claim beyond the line actually marked.

6th. If in correcting the survey, the surveyor extended the lower line, but called for the bearing trees first marked, the plaintiff can not claim beyond the corner trees established.

7th. That a grant is to be governed by its distinct and visible location calls, as marked upon the land, in preference to quantity, course, distance, map or anything else.

8th. If the jury believe that a line was marked for Miller's western line, it is the true line, and must govern, whether it corresponds with the distance called for or not.

9th. That the surveyor who originally surveyed the land could not adopt as the western line of Miller's survey, any other line than the one actually marked by him, unless he actually run and marked another line, if it were susceptable of being marked.

10th. If the trees marked as bearing trees and called for in the grant are found on the ground, they show the true corner, whether they correspond with the distance or not.

11th. If the trees marked as bearing trees and called for in the grant, as at one end of the western line, and no bearing trees are called for at the other end of the line, then the bearing trees called for and found on the ground, show the true location of the western line.

12th. That it is immaterial whether the defendant know that the plaintiff claimed the land in dispute before he purchased; the plaintiffs are not entitled to recover unless they show that the land in dispute is included within their grant.

13th. That it was competent for the surveyor to correct his survey, and it was his duty to do so when found to be wrong; but corners and lines called for by him, but never run or marked on the ground, are not to control or govern the lines and corners actually run and marked upon the ground; but the lines actually marked upon the ground are to govern the survey.

Verdict and judgment for defendant. Motion for a new trial overruled, &c. Bill of exceptions as follows: Be it remembered that on the trial of this case, the plaintiffs' counsel offered to read the Interrogatories and Answers of Murdock McKinnon, on file among the papers in the cause, and read the first interrogatory and answer, without objection being made, and then offered to read the second interrogatory and answer which were objected to by the defendant's coun. sel. 1st. Because the interrogatory was leading; 2nd. Because the answer is not responsive to the interrogatory; which objection was sustained and said second interrogatory and answer: "Do you know or did you hear Hubert admit that Bartlett informed him, that he (Bartlett) owned the Miller league, and that there was an open or unmarked line, and that part of the land Lawrence was pretending to sell was his, (Bartlett's,) and part of the Miller league?" If yea, please to state what Hubert said and did on the receipt of the information. Answer—I do, Mr. Hubert told me that Bartlett had informed him that there was an open or unmarked line

between them, and that they had agreed to have a friendly suit to decide the matter ; and Mr. Hubert sent for Mr. Lawrence to come and show him the corners. Mr. Lawrence came over and I went out in company with them to the south-west corner of Lawrence's survey, and from there with Kuykendall's line to a hackleberry on the edge of the prairie, which Lawrence said was his corner "—were ruled out by the Court and the plaintiffs refused permission to read said second interrogatory and answer, to which ruling of the Court the plaintiffs' counsel excepts, &c.

The first interrogatory to said witness, and his answer thereto, were as follows : Interrogatory 1st. Were you acquainted with F. W. Hubert at the time he purchased land in Washington county of A. Lawrence ? If yea, please to state what information you may know of Hubert's having a conflict with Jessee Bartlett, before he completed his trade. Answer to interrogatory 1st. I was—I had charge of Mr. Hubert's plantation at the time he made the purchase of land from A. Lawrence. Mr. Hubert instructed me to take the hands and go down, and Mr. Thomas Stevans would inform me where to commence work. Mr. Stevans directed me to the place, and on the next day after I went on the place, Mr. McFadden brought me a written notice not to intrude on the Miller league. I gave Mr. Hubert the notice as soon as he came down, which was in a day or two afterwards.

*A. M. Lewis*, for appellants. I. The Court erred in ruling out the the testimony of McKinnon. It proves, 1st. That defendant's intestate knew when he bought, that the line of the Miller league was not well defined ; and 2nd. That the vendor of Hubert showed the same hackberry that plaintiffs claimed as his true title.

II. The testimony of Sims shows that there was a mistake in the survey as first made, and that he immediately cor-

rected it, and extended the lower line some four or five hundred varas further west, and planted a corner. Kuykendall shows that one of his corners was on the line of the Miller league, and that the hackberry was a bearing tree.

III. Take the statement of Sims, Kuykendall, Clampett, Parker, and that part of McKinnon's ruled out, and the conclusion is irresistible, that the land was actually surveyed for Miller as he contends. It is true Sims did not testify to the marking of this line, but he does to a corner at the proper distance, and Parker found some marks on it. Kuykendall had his corner established on this line and the hackberry was a bearing tree. Lawrence showed Hubert this same hackberry as his line; and Clampett surveying for Hubert, found the hackberry, and actually marked the line from there to the old line that had been surveyed for Miller.

Add to all this, that if the finding for the defendant in the Court below was proper, it is to falsify two of the corners of the Kuykendall survey.

It may be said that the line contended for by the appellants, was not plainly marked. We answer that it was so plainly marked that the same Surveyor who made Lawrence's survey found it twice in making Kuykendall's; so plainly marked that Lawrence found it when called on by Hubert to show his line, and so plainly marked that Clampett found the same corner in 1843; and so plainly marked that when Parker was directed, he found a part of the line. It is true that the S. W. corner could not be found, because there had been a field opened where it should lie, and so of the N. W. corner; it is in the field of the appellee, and a part of the line runs through prairie.

*J. Sayles*, for appellee. I. But a single legal proposition is presented by the record in this case, viz: Do the marked lines and corners of a survey control, when they are variant from

the calls as to distance?   This question is settled in the affir-
mative by the decision of this Court in this case and in others,
and is the settled law in every State in the Union.   (Hubert
v. Bartlett, 9 Tex. R. 97 ; Urquhart v. Burleson, 6 Id. 502 ;
1 Hayw. R. 378 ; 3 Id. 287 ; 17 Johns. R. 28 ; 1 Yerg. R.
62 ; 4 Id. 483 ; 4 W. C. C. R. 45 ; 1 McC. R. 215 ; 9 Cranch,
173 ; Cooke, R. 158 ; 3 Marsh. R. 225 ; 4 J. J. Marsh. R.
342 ; 32 Maine, (2 Rev.) 251 ; 12 Penn. (2 Jones) 178 ; 9 B.
Mon. R. 82 ; 4 Hen. & Munf. R. 125 ; 4 S. & R. 454 ; Bragg
v. Lockhart, 11 Tex. R. 160 ; George v. Thomas, 16 Id. 74 ;
Bolton v. Lann, 16 Id. 96.)

II.   The question of fact, whether the western boundary
line of the Miller league, as claimed by the plaintiffs, was the
marked and true line, was fairly submitted to the jury ; and
their verdict would not be disturbed, unless against the weight
of evidence.   (9 Tex. R. 97.)

Sims states that in extending the lower line, he stuck a
stake in a dog-wood thicket at the end of the extension ; but
he did not in any way mark the extension, and in his corrected
field-notes, called for the bearing trees originally marked.
Even if the bearing trees had not been called for in the field-
notes, they would have determined the corner, being a more
permanent and notorious indication of the true corner, than a
stake set in a dog-wood thicket.   " Where a grant called for
" a stake at a given distance, and it was proved that a white
" oak, one hundred and thirty poles beyond the distance called
" for, was marked as the corner, it was held that the white
" oak, though not called for in the grant, was the true corner
" of the grant."   (Holland & Bridges, v. Overton's Lessee,
4 Yerg. R. 482.)

It is said that the hackberry, the corner of Kuykendall's
survey, determines the true western line of the Miller survey.
But it appears from Chriesman's testimony that he called for
the Miller western line, obtaining its locality from calculation,

and that when he marked the hackberry, he looked for the line of Miller's survey, but could not find it. In truth, the hackberry is not upon the line claimed by the plaintiffs. Although, *arguendo*, they only claim to the line formed by the hackberry ; thus themselves abandoning the call for distance, and claiming to go only to a line determined by a subsequent survey.

By the law in force at the time the survey was made, the Surveyor was required to establish the corners and lines clearly, for the purpose of showing the locality of the tract, so that subsequent Surveyors could find the lines with certainty.

III. McKinnon's testimony was properly excluded. The interrogatory was leading and suggestive ; the testimony, however, if received, could not have affected the result.

ROBERTS, J. The question in this case is, which is the true western boundary line of the Miller league : the one which the Surveyor Sims ran, in making the survey? or the one which he called for by course and distance and did not run? It is now shown by Sims, the Surveyor, that he completed the survey ; and finding, upon calculation, that it contained too little land, he corrected the survey by extending the Southern boundary line, four or five hundred varas, and at that point putting down a stake. He did not make a regular corner there, by making bearing trees or calling for any objects ; but in designating that corner, (the south-west,) he called for the bearing trees which he made in making the survey. So with the north-west corner. The western boundary of the corrected line was not run ; nor was the extension line of the northern boundary run.

After making the survey, then, with plainly marked lines and established corners, the Surveyor sought to correct and enlarge it, by simply running out one line from a corner of the

tract, establishing no corner there, but calling for that distance in his field-notes.  Still the field notes called for the bearing trees at the corners established in the original survey.  This was in fact no correction of the survey, at all.  The object of marking the lines and establishing corners of land, is to fix ascertainable boundaries, and give notice of appropriation to all who have access to the field-notes.  In both of these, was this correction wanting.  The principles involved in this case were settled by this Court, when it was here previously. (Hubert v. Bartlett, 9 Tex. R. 97.)  There is nothing in the case, as now presented, to change the result then arrived at.

The evidence, objected to by the appellee, was properly ruled not to be admissible.  The testimony, sought to be introduced, was wholly immaterial to the true issue in the case, as above stated.  And had it been material the question was leading, and part of the answer was irresponsive ; and it was therefor liable to the objections made to it.

The charge of the Court was in accordance with the Opinion of this Court previously delivered ; and is believed to have been sufficient and correct.

Judgment affirmed.