## CAROLINE C. STAFFORD *v.* ADAM C. KING.

It is the duty of a surveyor of the public land to run round the land located, and to see that such objects are designated as will clearly identify the locality, and to call for these objects, natural and artificial, in his field-notes of the survey; and when the field-notes assert that the survey has been made, the calls will be presumed to be true until the contrary is proved; and as to lost calls, the presumption will be indulged that they have been destroyed or defaced; and even if it be established that the land was not

xxx—17

in fact, surveyed, the patent will not be held void, if the boundaries can be identified by any reasonable evidence.

If there be a defined· beginning-point, the boundaries may be established by course and distance alone.

Natural objects are mountains, lakes, rivers, creeks, rocks, and the like; artificial objects are marked trees, stakes, mounds, &c., constructed by others or the surveyor, and called for in the field-notes, and they should be inserted in the patent. (Paschal's Dig., Art. 5294, Note 1144.)

In all future controversies these calls are to be searched for, and, if found, there can be little room for controversy about the boundaries; if not found, or found out of their places, then the rules of law must control.

The general rules as to controlling calls are: 1, natural objects; 2, artificial objects; 3, course and distance. (Paschal's Dig.. Art. 5294, Note 1144.)

The true and correct location of the land is ascertained by the application of all or any of these rules to the particular case. And when they lead to contradictory results or confusion, that rule must be adopted which is most consistent with the intention apparent upon the face of the patent, read in the light of the surrounding circumstances.

The most material and certain calls shall control those which are less material and less certain. A call for a natural object, as a river, a known stream, a spring, or even a marked tree, shall control course and distance. (Paschal's Dig., Art. 5294, Note 1144.)

Course and distance are the most unreliable calls; distance is less reliable than course, because of the mistakes of the officers, over which the locator has no control; but of natural and artificial objects the locator can take note on the ground; hence the general rule, that course and distance yield to natural objects; while, under certain circumstances, course and distance may control, yet generally they are but guides to the other calls.

The actual identification of the survey, the footsteps of the surveyor upon the ground, should always be followed, by whatever rule they may be traced.

Calls are also divided into descriptive or directory and special locative calls. The former, although consisting of lakes and creeks, must yield to special locative calls, that is, to particular objects upon the corners or lines of the land.

Where a survey called to commence in the immediate neighborhood of a well-known corner, and to run east three thousand one hundred and sixty varas to the corner of another survey, and by following the distance not one of the natural or artificial objects called for could be found at the places named, whereas if the first line stopped at the distance of seven hundred and fifty varas every crossing of the creek, spring, and artificial object called for were found, the long distance called for was disregarded, and, in the light of the surrounding circumstances, the survey was made to stop at seven hundred and fifty varas.

The fact that the survey thus established had been patented to another party does not disprove the identity.

Where the charge of the court, as to the law governing the case, was erroneous, the judgment will be reversed.

Where it is objected that a witness, whose depositions are offered, is not shown to be out of the county at the time of trial, the objection should be sustained, unless oath be made as required by the statute. (Paschal's Dig., Art. 3726, Note 845.)

Where the commissioner of the general land office testifies as to records in his office, it is a good objection that the records are not produced. They are higher evidence than the commissioner's conclusions as to their contents. (Paschal's Dig., Art. 3715, Note 839.)

The object of the verdict of a jury is to respond to the issues made in the pleadings and supported by the evidence. The judgment must be a conclusion of law from the facts found, and all must be so certain that the ministerial officers may execute the judgment without further directions.

Where the issue was as to the conflict of surveys, the verdict should find what the actual conflict is; and the judgment should rest upon the verdict, and not upon a survey made upon a former trial.

If a defendant prove three years' continuous possession before the institution of the suit, claiming under a location and survey under a valid certificate, (with a title derived from the grantor,) he is entitled to the benefit of the 15th section (three years) of the statute of limitation. (Paschal's Dig., Art. 4622, Note 1031.)

APPEAL from Cherokee. The case was tried before Hon. REUBEN A. REEVES, one of the district judges.

This action of trespass to try title was instituted by appellee the 11th of September, 1858, alleging the appellee to be the owner of a tract of six hundred and forty acres of land, which is alleged to commence three thousand one hundred and sixty varas east of the southeast corner of the John R. Taylor survey of a half league; thence north four hundred and eleven varas to corner; thence east one thousand nine hundred and eight-tenths varas; thence south one thousand nine hundred and eight-tenths varas; thence west one thousand nine hundred and eight-tenths varas; thence north one thousand four hundred and eighty-nine and eight-tenths varas to the place of beginning, which is alleged to include the residence and improved land of appellant.

Plaintiff set out his title, and averred that in 1838 a cer-

tificate for six hundred and forty acres of land was issued to Mobly Rhone, which was approved as genuine, &c. That this certificate was filed on the land described in the petition, and that a patent duly issued to the land on the 31st day of July, 1845. He also alleged that, in 1852, he sued appellant for the same land, which suit was decided against him; and that this was the second suit allowed under the statute. (Paschal's Dig., Art. 5298.) No survey of the land was averred, nor was there any proof that a file was ever made on the land.

In an amended petition, it was averred that, in 1839, the John H. Irby or John R. Taylor surveys were well known; and that from that time the land claimed by appellee had been well known as the Mobly Rhone survey, and was known to the appellant and those under whom she claimed at the time of the accrual of their rights; that it was precisely similar in size and shape to a survey made for Reason Franklin, lying adjacent to it; that the beginning-point of the Rhone and Franklin surveys is the same for calls; that the surveys are identical in the calls for course and distance, except that the Franklin survey calls to begin nearer to the John R. Taylor survey; and it was averred that the land granted to Rhone lies entirely east of the Franklin survey; that there the marks, natural and artificial, as described in the patent to Rhone, cannot be found on the ground where it was alleged the land lies. It was averred that the mistake was caused by the accident, carelessness, or inattention, or conjecture of the surveyor, and the field-notes of a survey made by A. J. Coupland, under order of the court during the pendency of the former suit between these parties, were made a part of the petition, and it was averred that they correctly described the land patented to said Rhone.

Appellant answered, excepted to appellee's petition, because the land was not described with sufficient certainty, &c., and because appellee derived his title from the govern-

ment, but did not aver that any survey of the land was made, and no sufficient description of the land was given.

For answer, appellee plead not guilty, &c., and limitation of three and five years; alleged that no survey in fact was ever made, covering or embracing the land in controversy; and averring that the land described in the patent to Mobly Rhone was entirely away from and off the land in controversy, which was occupied by appellant. Appellant also plead occupation and improvement made in good faith, &c.

On the trial, the plaintiff below read in evidence the patent to Mobly Rhone, which was objected to because it was variant from the land and patent described in the petition; there was a deed from Rhone to himself; an agreed statement signed by the attorneys, admitting as genuine the certificate to Mobly Rhone, also that the certificate to John H. Power, under which appellant claimed, was genuine, and that said certificate was transferred by Power to Tubb in 1847, and by Tubb to Pearson in 1848, and by Pearson to Gray and wife in 1849, and by Gray and wife to appellant in 1851, that said transfers had been regularly recorded, &c.

E. G. Armstrong, a witness for appellee, said that in October, 1857, by order of the district court of Cherokee county, he made a survey of the land in controversy, which was given in the record; that in making the survey he went to the southeast corner of the John H. Irby or John R. Taylor survey, and ran a line from thence east three thousand one hundred and sixty varas; he set a stake for the beginning-point, and from thence ran the courses and distances as called for by the patent; that the survey so made did include the residence and improved land claimed by appellant; that he made diligent search at the place fixed upon for the beginning for marked lines, &c., and made search at all the corners, and along the lines of the survey

made by him, for corners and marked lines, but could find
no old lines; that from his examination he was satisfied
that no corner-trees or lines had ever been marked there;
that to commence at the southeast corner of the John H.
Irby or John R. Taylor survey, and run east three thousand
one hundred and sixty varas for a beginning-point, and
then running the courses and distances called for in the
patent, would include the land claimed and occupied by
the defendant.

That on the 3d day of November, 1855, he made a sur-
vey, commencing at the southeast corner of the John R.
Taylor survey, and running east seven hundred and fifty
varas he found marked lines; and running north four hun-
dred and eleven varas found a marked tree and corner, as
called for in the patent to Rhone; and from thence, running
the course and distance called for in the patent, he found
marked line-trees and corners, Camp and Mud creeks, as
called for in the patent.    Witness said that the survey as
made by him on the ground agrees with the calls of the
patent as well as any survey he has ever made.

The file made by P. H. Tubb, on the 14th of April, 1848,
under which appellant claimed the land, the survey made
for Mrs. Gray, which covered the file, or nearly so, were
also in the record.    Armstrong said the house occupied by
Mrs. Stafford, the appellant, was a few varas west of the
survey made for Mrs. Gray under and by virtue of the
Power certificate.    That to commence at the southeast cor-
ner of the John R. Taylor survey, and run east three thous-
and one hundred and sixty varas for a beginning-point, and
then running the course and distances called for in the pat-
ent to Mobly Rhone, would include the premises and land
claimed by appellant.    That a survey so made would agree
with the patent in the calls for course and distance; but all
the other calls of the patent would be in conflict with a sur-
vey so made.    That in running the east line of said survey,
made by him under the order of the court, he crossed a

lake thirty varas wide. That it was such an object as would likely be stated in the field-notes of a survey as a matter of description.

It was admitted by the plaintiff that no survey in fact was ever made by virtue of the certificate to Mobly Rhone, upon which the patent issued, covering or embracing the land in controversy, and which was occupied by the defendant. But it was contended by plaintiff, that the patent operated to convey the land to the grantee, without an actual survey being made. When the deposition of James M. Trimble was offered, the defendant objected to reading the deposition in evidence, unless oath were made that Trimble was not in the county. The objection was overruled, and the deposition was read. S. Crosby said that he was a clerk in the land office from 1845 to 1852, and commissioner of that office from 1852 to 1858; that he had been familiar with the maps and surveys in the general land office since 1845; that the Mobly Rhone and Reason Franklin surveys were in the office; that, as represented on the map, the Rhone survey lies east of the Franklin survey. When the survey made for M. D. Vaughan came up for examination, it was said to be in conflict with the Rhone survey; and in June, 1851, a transcript of the field-notes of the Rhone and Franklin surveys was filed in the office by Carter, the assignee of the M. D. Vaughan certificate; that the Rhone and Franklin surveys both called for the same land; and on this and the testimony of Trimble and Coupland, that there was no evidence of a survey to be found commencing three thousand one hundred and sixty varas east of the John R. Taylor survey, the Rhone survey was considered to be removed, so as not to conflict with the Vaughan and Gray surveys, and the patent was issued to Carter as assignee of Vaughan, &c.

Irby, a witness for appellee, testified that he was present at the time the line was run from the John R. Taylor to

the Reason Franklin survey; that the line was run in the evening, and the next day the party were surveying about the same place. He proved the declarations of a party claiming to be M. Rhone, and also proved the declarations of persons in the vicinity of the land as to where it was said to be located. Witness knew Camp creek since the date of the survey, in 1839; it had been well known since that time; it runs through or across the Franklin survey. It would not touch at any point a survey of six hundred and forty acres commencing three thousand one hundred and sixty varas east of the John R. Taylor survey above mentioned, and from thence running as called for in the patent to Rhone; nor would a survey so made be nearer than one-half mile of Camp creek.

Armstrong and Coupland, who had been on the land and made surveys under order of the court, agreed with Irby that a survey commencing and running the course and distance as called for in the patent to Rhone would not come nearer than a half mile of Camp creek. Irby further stated, that Tubb, under whom appellant claimed the land, settled upon it in 1847, and that it had been occupied continually since that time by persons who claim under and through Tubb. A regular chain of title and occupation was shown from Tubb to appellant.

Myers proved that the patents to Rhone and Franklin were precisely the same, except that it was seven hundred and fifty varas from the John R. Taylor survey to the beginning of the Reason Franklin survey, and three thousand one hundred and sixty varas from the Taylor to the beginning of the Rhone survey—the place assumed as the beginning, no survey having been made.

The appellant read in evidence the certificate to John H. Power and the field-notes of the survey made by virtue of the Power certificate. It was in proof that the patent to Carter, assignee of the M. D. Vaughan certificate, conflicted

about eighty acres with the land claimed by appellee, and the house and a small portion of land claimed and occupied by appellant was on the grant to Carter. All the other improvements were on the Power survey, or the land surveyed by virtue of the Power certificate.

Vansickle said there might be a mistake as to the begining of the survey of Mobly Rhone. If this were admitted or established, the difficulty in regard to the survey would be removed. As the survey is, and the field-notes as in the patent appear, there is no conflict with the survey as found on the ground, marked lines, corners, and creeks; except in the distance from the southeast corner of the John R. Taylor survey to the point designated as the beginning of the Rhone survey, there is no discrepancy. All the other calls in the patent to Rhone were found on the ground as described in the patent to Rhone; but it removed the survey entirely off the land occupied and claimed by the appellant; he made the survey; the lines of the survey and corner-trees were plainly marked.

The deposition of A. A. Nelson proved that he was surveyor of the Nacogdoches land district from the year 1840 to 1856; that Cherokee was taken from the Nacogdoches land district in 1848; that the survey of Rhone was not designated on the map which was made in 1846.

The judge charged the jury, that when a survey calls to begin so many varas from a certain corner of an older survey, which is established, the beginning-point may be ascertained by running according to the calls in the patent. If there is no actual survey, there must be such a description on the face of the patent as would lead to and identify the place designated, and such as would enable subsequent locators to appropriate the adjacent lands; that if Irby or John R. Taylor's corner had been identified, and Rhone's beginning-corner was shown to be three thousand one hundred and sixty varas from the Taylor survey, the remaining

calls of the patent for the natural objects, if found on the ground, would control, if there were no marked lines, or if they were inconsistent with the natural objects on the ground as called for in the patent; then the calls for course and distance, as given, must fix the boundaries of the Rhone patent.

There were motions for new trial and in arrest of judgment.

A new trial was asked, on the ground that the court erred in the various rulings upon the admission of the testimony and in the charge to the jury, and in refusing to give the charges asked by appellant, and because the verdict was against law and evidence, and because the verdict was not responsive to the issues, and did not find for the plaintiff the land sued for.

Motion in arrest of judgment, because the verdict did not ascertain and find on the matter in issue between the parties, and did not find for the plaintiff the land described in the petition; and did find for the plaintiff the land in the patent, when no patent was averred by the plaintiff, and three patents were referred to in the evidence.

The verdict was, "We the jury find for the plaintiff all the land embraced within the bounds as claimed by the patent."

It was assigned for error that the court erred in overruling the defendant's exception to the petition and the other rulings of the court.

*Donley & Anderson*, for appellant, argued against the form of the petition.

The question arises whether a patent is sufficient to appropriate the land, when there has been no survey of the land.

We concede that a patent to land is, *prima facie*, evidence that all the preliminary steps have been taken to

justify its issuance, and raises the presumption that all the legal requisites to the issuing of the patent have been complied with.

It has, however, been held by this court, that the issuing of a patent is a ministerial act, and must be performed according to law. If issued against law it is void, and those claiming under it acquire no right. (State v. Delesdenier, 7 Tex., 76.)

The principle announced in this case has been sustained in numerous cases adjudicated by other courts. (Hunderkoffer v. Burns, 1 Wash. C. C., 109; Stoddard v. Chambers, 2 How., 284.)

[They reviewed the Texas legislation, showing the steps by which lands are located, surveyed, and patented.]

No authority has been cited that a patent, without a previous survey, has been issued, unless it was represented that a survey in fact had been made.

[They cited Winter v. Jones, 10 Ga., 190; Lessee of Hunderkoffer v. Burns, 1 Wash. C. C., 109; Lessee of DuBoise v. Newman *et al.*, 4 Wash. C. C., 74; Lessee of Griffin v. Bradshaw, 4 Wash. C. C., 171; Hamilton v. Wills, cited in a note to Witherenton v. McDonald, 1 H. & M., 307.

The facts in relation to the calls and lines were reviewed. Anderson v. Stamps, 19 Tex., 464; Urquhart v. Burleson, 6 Tex., 502; Hubert v. Bartlett, 9 Tex., 97; George v. Thomas, 16 Tex., 74; Boulton v. Lann, 16 Tex., 96; Henry v. Henry, 5 Barr, 249; Kelly v. Graham, 9 Watts, 116.]

It is assigned for error, that "the court erred in rendering judgment on the verdict of the jury in this cause, and in refusing to arrest the judgment herein," &c.

The jury "find for the plaintiff all the land embraced within the bounds, as claimed by the patent," &c.

As there are conflicting calls in this patent, the verdict in fact determines nothing.

If the patent to Mobly Rhone is referred to, what are

the bounds of the land ascertained by the patent, the courses and distance, or the marked lines and natural boundaries? We shall not go again into this matter. We refer to the authorities hereinbefore cited on this question. We believe that they are conclusive of the question, that the marked lines and natural boundaries shall govern. We cannot add to those authorities by argument. On the question of the sufficiency of the verdict, it is said, in Young v. Wickliffe, 7 Dana, 447, "this is not responsive to the issue, and did not authorize the judgment."

In Russell v. Cornwell, 2 Root, 68; 2 U. S. Dig., § 463, it is said, that "a judgment will be arrested where the issue put is not answered directly by the verdict and judgment."

In Kurle & Walker v. Shrive, 11 Gill & Johns., 405, it is held, that "a verdict which omits to find a material issue joined in the cause may be made the subject of a motion in arrest."

In Crommitten v. Minter *et al.*, 9 Ala., 595, the verdict was, "We the jury do find in favor of the said plaintiffs, and we find the right and title to said land in the plaintiffs' declaration mentioned, to wit, fifty acres of the southeast fractional quarter of fractional section twenty-four, in township eighteen, in range eighteen, in the district of lands subject to sale in Cahaba, Alabama, to be in said plaintiffs," &c. It is said that this verdict would have been sufficient, if it had not affirmed that the plaintiffs had title to so much of the land, leaving it to be inferred that the title to the residue was in some one else. (Jenkins v. Noel, 3 Stew., 60; Brown v. Hilligas, 2 Hill, 447; Patterson v. The United States, 2 Wheat., 221.)

*J. F. Wood*, for appellee.—I. Can the plaintiff recover, under his patent, by establishing the beginning-point without an actual survey upon the ground?

II. Are the rights of the plaintiff below (defendant

here) affected by prescription or the statute of limitation; and to what extent, if affected?

As to the second point, the statute of limitation, there can be but little difficulty. Mrs. Stafford lives on the Vaughan survey, about eighty acres of which conflicts with the Rhone survey. And although it is shown that, by the proof, she, and those under whom she claims, had lived there since about 1847, yet the deed or patent to the Vaughan survey is 5th June, 1851, less than a year prior to the commencement of the action, which was on 13th April, 1852. The statute could not begin to run until some claim by boundaries was set up, so that, as to the survey, the statute does not run.

And as to the Power's survey, under which appellant also claims about eighty acres, the proof shows the file in that case to have been made 14th April, 1848, and the survey in November, 1850; and a very material question here arises, as to the time at which the statute should begin to run, whether at the date of the file or at the date of the survey.

*M. Priest* also filed a long and able argument for appellee.

SMITH, J.—It is the duty of the surveyor to run round the land located and intended to be embraced by the survey and patent, and see that such objects are designated on it as will clearly point out and identify the locality and boundaries of the tract, and to extend a correct description of these objects (natural and artificial, with courses and distances) into the field-notes of the survey, in order that they may be inserted in the patent, which will afford the owner, as well as other persons, the means of identifying the land that was in fact located and surveyed for the owner, [21 Tex., 20;] and until the reverse is proved, it will be presumed that the land was thus surveyed and boundaries plainly marked and defined. And if any object of a per-

ishable nature, called for in the patent, be not found, the presumption will be indulged that it is destroyed or defaced; but if it be established, by undoubted evidence, that the land was not in fact surveyed, yet, as the omission was the fault of the government officer and not the owner, it would seem extremely unjust to deprive him of the land, by holding the patent to be void, if the land can, by any reasonable evidence, be identified. And if course and distance alone, from a defined beginning-point, will, with reasonable certainty, locate and identify the land, that will be held sufficient. (Newson v. Pryor's Lessees, 7 Wheat., 7; 16 Tex., 440; 5 Monr., 159.) Then we must conclude that the position of the appellant, that a patent, without a survey having been made of the land, should be held void, cannot be sustained.

The main point in this case appears to be, whether the Mobly Rhone patent for six hundred and forty acres of land in fact covers any of the land claimed by the defendant below.

As has been intimated, it is the purpose of the government and the locator to select a particular tract of land and designate it from the mass of the public domain. (21 Tex., 21; 9 Tex., 103.) And hence the directions given by law to run round the land—in fact, point out and define upon it such natural objects, or plain artificial marks, with courses and distances, by which the land can at all times be easily found and identified. Natural objects are mountains, lakes, rivers, creeks, rocks, and the like. Artificial objects are marked lines, trees, stakes, &c. A description of these objects and marks of identity should be faithfully transferred into the field-notes, and thence into the patent, to serve the purpose aforesaid; and in all future controversies in respect to the *locus* or boundaries of the tract, recourse must be had to these calls, and when they are all found and established in conformity with those set forth in the patent, the conclusion is almost irresistible that the

tract of land covered by the patent is identified, and there can be little or no room for controversy about the boundaries of the land; but when all the calls of the patent cannot be found, or if found to be inconsistent with others, in whole or part, and leading to a different result or confusion, then it becomes important to look to the rules of law that must govern the action of the court and jury, in respect to the character and weight of the evidence to be considered by them in fixing upon and establishing the true boundaries of the survey.

It has been often said by this court that the general rules are, that the location should be governed, first, by natural objects or boundaries, such as rivers, lakes, creeks, &c.; second, artificial marks, such as marked trees, lines, stakes, &c.; and, third, course and distance.

The true and correct location of the land is ascertained by the application of all or any of these rules to the particular case. And when they lead to contrary results or confusion, that rule must be adopted which is most consistent with the intention apparent upon the face of the patent, read in the light of the surrounding facts and circumstances.

The rule stated by Chief Justice MARSHALL in Newson v. Pryor, 7 Wheat., 7, is, "that the most material and most certain calls shall control those which are less material and less certain. A call for a natural object, as a river, a known stream, a spring, or even a marked tree, shall control both course and distance." (6 Tex., 502; 16 Tex., 110; 9 Tex., 103; 22 Tex., 594.)

Of all these *indicia* of the locality of the true line, as run by the surveyor, course and distance are regarded as the most unreliable, and generally distance more than course, for the reason that chain-carriers may miscount and report distances inaccurately, by mistake or design. At any rate, they are more liable to err than the compass. The surveyor may fall into an error in making out the field-notes, both

as to course and distance, (the former no more than the latter,) and the commissioner of the general land office may fall into a like error by omitting lines and calls, and mistaking and inserting south for north, east for west. And this is the work of the officers themselves, over whom the locator has no control. But when the surveyor points out to the owner rivers, lakes, creeks, marked trees, and lines on the land, for the lines and corners of his land, he has the right to rely upon them as the best evidence of his true boundaries, for they are not liable to change and the fluctuations of time, to accident or mistake, like calls for course and distance; and hence the rule, that when course and distance, or either of them, conflict with natural or artificial objects called for, they must yield to such objects, as being more certain and reliable.

There is an intrinsic justice and propriety in this rule, for the reason, that the applicant for land, however unlearned he may be, needs no scientific education to identify and settle upon his land, when the surveyor, who is the agent of the government, authoritatively announces to him that certain well-known rivers, lakes, creeks, springs, marked corners, and lines constitute the boundaries of his land. But it would require some scientific knowledge and skill to know that the courses and distances called for are true and correct, and with the aid of the best scientific skill mistakes and errors are often committed in respect to the calls for course and distance in the patent. The unskilled are unable to detect them, and the learned surveyor often much confused.

Although course and distance, under certain circumstances, may become more important than even natural objects—as when, from the face of the patent, the natural calls are inserted by mistake or may be referred to by conjecture and without regard to precision, as in the case of descriptive calls—still they are looked upon and generally regarded as mere pointers or guides, that will lead to the

true lines and corners of the tract, as, in fact, surveyed at first.

The identification of the actual survey, as made by the surveyor, is the *desideratum* of all these rules. The footsteps of the surveyor must be followed, and the above rules are found to afford the best and most unerring guides to enable one to do so.

There is another rule to be observed in estimating these natural and artificial calls. They are divided into two classes: descriptive or directory, and special locative calls. The former, though consisting of rivers, lakes, and creeks, must yield to the special locative calls, for the reason that the latter, consisting of the particular objects upon the lines or corners of the land, are intended to indicate the precise boundary of the land, about which the locator and surveyor should be, and are presumed to be, very particular; while the former are called for without any care for exactness, and merely intended to point out or lead a person into the region or neighborhood of the tract surveyed, (9 Yer., 55,) and hence not considered as entitled to much credit in locating the particular boundaries of the land when they come in conflict with special locative calls, and must give way to them.

In this case the southeast corner of the John R. Taylor survey appears to have been notorious in the neighborhood and well established. The line calling to run east three thousand one hundred and sixty varas, to the beginning-corner of the Mobly Rhone survey of six hundred and forty acres, when extended that distance, is unsupported by any natural or artificial call mentioned in the patent or proved to have been made by the surveyor. When that line was run out by Armstrong, the distance and course called for, thence around the tract, the courses and distances called for in the patent, for the four corners and lines of the tract, not one single natural or artificial object called for in the patent could be found upon the ground at

xxx—18

all corresponding with it, as described in the patent. But it is contended by the appellee that no survey was in fact made by the surveyor, and that the tract was surveyed by protraction, beginning at the Taylor southeast corner. To support the truth of this supposition, it must be admitted that the surveyor did not perform his duty; that the locative calls of the patent were never in fact made or found, and were falsely placed in the patent by the surveyor, or that they have, since the designation of them, been destroyed or defaced, and cannot now be found; while it must be admitted that Mud creek and Camp creek, called for in the patent, are not liable to destruction, if it be admitted that all the marked trees may have been destroyed or defaced by accident or design.

There is no evidence adduced, except the admission of the plaintiff himself, that the survey was not in fact made, or that it was made by protraction; while, on the contrary, it has been most satisfactorily proved, that if the line east from Taylor's corner be stopped at seven hundred and fifty varas from that point, thence following the courses and distances called for, we find every call of the patent on the ground, natural and artificial. Mud and Camp creeks are crossed, each twice, and a spring reached at the very points called for in the patent, the corner and bearing-trees also corresponding with the patent, fortified by course and distance. It is true, no witness has testified that these were the lines actually run by the surveyor for the Mobly Rhone survey. Some evidence tended to show it was surveyed for Reason Franklin. It may have been surveyed at the time for Franklin, but, like the Irby survey, which was transferred to Taylor, this may have been applied to the Mobly Rhone claim. The wonderful coincidence of the locative calls of the patent with the objects found here on the ground would appear to leave but little doubt that they were the true locative calls of the Mobly Rhone survey, and that there was a mistake in the length of the descriptive call of three thousand

one hundred and sixty varas, and that its true length is seven hundred and fifty varas. The distance of this line is the least important or material of all the calls in the patent. It is directory or descriptive in its character, and forms no part of the boundary of the survey, and evidently was intended only to point and direct a person to the neighborhood in which the special locative calls could be found, and about its accuracy the parties may not have been very particular. And in this view we are of opinion this call should yield to the more specific calls found on the ground. It will be observed that if we hold that this line is correctly stated to be three thousand one hundred and sixty varas, we do not find one other solitary call of the patent on the ground; and we are asked to presume that the report of the calls in the patent were false, and that no survey was in fact ever made on the land; while, on the other hand, if we hold that this descriptive call of three thousand one hundred and sixty varas was a mistake in distance, and that its true length is only seven hundred and fifty, then we find every corner, bearing-tree, line, and the two creeks called for, all corresponding with the calls in the patent, in respect to identity and course and distance; and from the rules laid down it seems that we must hold the true length of that line to be seven hundred and fifty varas, and force it to yield to the more material and locative calls of the patent found upon the ground.

It is said that this same tract was surveyed for and patented to Franklin. This, we conceive, can be of but little importance in fixing upon the boundaries of the Rhone survey. If it amounts to anything, it only proves that two patents have been issued for the same tract of land, which, by the by, has been very often done, but not often, perhaps, with lines corresponding so literally. But we do not think that at all affects the question of boundary involved in this case. Because Mobly Rhone has secured a patent upon Franklin's land, we cannot see how that can furnish any

reason why he should take that of any other person in its stead.

The line from Taylor's southeast corner we regard as a descriptive or directory call; and, if found to be in conflict with any of the locative calls found and identified upon the ground, then it must yield to them, as being more material and important.

We believe the charge of the court gave too much importance to the descriptive call of three thousand one hundred and sixty varas over those of a locative character; and that it did not present to the jury properly the rules that should govern them in establishing the boundaries of the Rhone survey; and that it erred in refusing the charge asked by the defendant in that respect, and should have granted the defendant a new trial on her motion.

The objection to reading the deposition of Trimble, for want of an affidavit that he was out of the limits of the county, was improperly overruled. (O. & W. Dig., Art. 464; 9 Tex., 339; 12 Tex., 111.)

The exceptions to the deposition of Crosby, in respect to the contents of records and papers in his office, should have been sustained. Copies were better evidence of these facts. (22 Tex., 293.)

The object of a verdict is to respond to and decide the issues between the parties upon the evidence adduced, and to declare the respective rights of the parties as involved in the issue with certainty, so that the judgment can be entered with like certainty, and the ministerial officers can carry it into execution, without determining additional facts. (20 Tex., 442; 22 Tex., 173.)

The issue here was not whether the plaintiff owned the land claimed in the petition. The defendant did not deny such claim, but contended that the patent of the plaintiff did not embrace the land they claimed, and that it was located elsewhere; and the issue was, whether the land claimed under the Rhone patent conflicted with that

claimed by the defendant. To this issue it seems the jury did not respond with that certainty required by law. The verdict responded to the evidence adduced, (the patent,) but not to the issue which the patent was introduced to support.

The judgment is equally liable to objection. Instead of declaring the legal sequence of the verdict and the issues, it establishes the judgment; established and ratified the correctness of a survey made by A. J. Coupland in 1852, by order of the district court in a former suit, which survey constituted no part of the pleadings or verdict. It would seem that the verdict of the jury left the issues and the rights of the parties where they were before the trial, and that the ministerial officers of the court cannot carry the judgment out without determining the fact whether the plaintiffs' land really conflicts with that of the defendant, and to what extent.

If the defendant had proved continuous and adverse possession of the premises by herself and those she claimed under for three years before the institution of the suit, under the location and survey of the Power certificate, it is not seen why the defense of three years' limitation failed her. But it is not clear to us that it was shown that the improvements made on the land in 1847 and 1848 were upon land common to both the location and the survey. As this case will go back for a new trial, and these doubts may be removed, therefore we will not now further discuss it.

There being error in the proceeding, therefore the judgment below is reversed, and the cause remanded for a new trial in conformity with this opinion.

REVERSED AND REMANDED.