McGUIRE v. BLAIR et al. (No. 148.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 22, 1917. Rehearing Denied March 28, 1917.)

1. PARTITION ☜92—BOUNDARIES—EFFECT OF SURVEY.

In trespass to try title, plaintiff *held* not bound by prior survey in partition proceedings where the decree in such proceedings disregarded such survey and was in conflict therewith.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 274–284.]

2. BOUNDARIES ☜37(1) — FINDINGS—SUFFICIENCY OF EVIDENCE.

In trespass to try title, finding that boundary line established in partition proceedings was not surveyed line contended for by plaintiff, but that decree disregarded such survey, *held* supported by evidence.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–189, 192, 194.]

3. BOUNDARIES ☜3(6)—SURVEYS—EFFECT.

Where commissioners in partition disregarded survey in their decree, the rule that lines and corners established by survey and marked on the ground cannot be changed have no application in subsequent proceedings to try title.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 24–29.]

Error from District Court, Liberty County; J. Llewellyn, Judge.

Trespass to try title by J. E. McGuire against F. M. Blair and others. From the judgment locating the boundary lines, plaintiff brings error. Affirmed.

H. E. Marshall, of Liberty, for plaintiff in error. J. F. Dabney, of Liberty, for defendants in error.

DAVIS, J. This is a suit of trespass to try title, brought by J. E. McGuire on January 20, 1910, in the district court of Liberty county, Tex., against F. M. Blair, Mrs. M. B. Carson, J. H. Carson, and Kathleen O'Connor, to recover certain land in the Reason Green league, in said county. The case was tried before the court without a jury, and resulted in a judgment for the defendants for the land described by them in their respective answers, and for the plaintiff for such land described by him in his petition, not in conflict with the lands of defendants, which was determined by fixing and locating a certain divisional line between the north half and the south half of said league, from which judgment plaintiff has appealed.

The pleadings of plaintiff and defendants set out by metes and bounds the several tracts of land claimed by them, respectively. That each of the parties to this suit owns the fee simple title to lands on the Reason Green league is not disputed, but conceded; but just where the boundaries of the several tracts should be is the question in dispute, and determining where the boundaries of the several tracts should be depends upon the true location of a division line between the north half and the south half of the said Reason Green league. This division line runs from a point on the Trinity river west through the Reason Green league, and the first deed, as shown by the record, calling for this division line, was made by the heirs of Reason Green to A. E. Shackelford on May 24, 1871, wherein the grantors conveyed the south half of said league, and described this division line as follows:

"The said south half to be separated from the north half thereof by a line to be run through the center of said league, beginning on the bank of Trinity river."

The Richard Green league lies just north of and adjoining the Reason Green league, and the southeast corner of the Richard Green league and the northeast corner of the Reason Green league are the same; each calls to begin with the other on the west bank of Trinity river.

It appears from the record that the south line of the Reason Green league and the northwest corner of the Richard Green league are well located and undisputed; and, taking these known landmarks, and running out both leagues in accordance with their respective field notes, it will establish the southeast corner of the Richard Green league and the northeast corner of the Reason Green league at a point on the west bank of Trinity river, 338 varas south of the mouth of Mud bayou. Then, to begin at the northeast corner of what is known as the Dunche tract, which is the southwest quarter of the Reason Green league, there is an old line that divides the Reason Green league into north and south halves. Plaintiff in error claims this line is crooked, and does not appear to be, and was not intended to be, the division line between the north half and the south half of said league, but that this line was run by one Wharton Branch a number of years ago, for the purpose of marking a boundary beyond which certain parties, timber cutters, should not cut timber; but defendants in error claim that this line is a straight line, and does, in fact, divide the league into north and south halves, and was recognized by the owners of the land as the dividing line, and that, following this line east to the river, you reach a point 338 varas south of where plaintiff in error claims this point should be. The evidence discloses that to begin at a point on the Trinity river at the place where plaintiff in error claims is the correct location, and running west through the Reason Green league for this division line, would reach a point on the west line of the Reason Green league about three-quarters of the distance up said lane from the southwest corner of said league, and would pass between 350 and 450 varas north of the recognized northeast corner of the Dunche southwest corner of said league, and would, therefore, not divide the league in equal parts, but would make the south part much larger. Now, the correct division line as claimed by plaintiff in error is designated in the record as the Eubank line, and the correct division line as claimed by defendants in error is designated in the record as the Branch line. The evidence shows, that the Branch line extends through the entire league, and divides the league equally, but the Eubank line runs only part of the way, and does not extend to the west line of the league, and does not divide the league equally.

W. F. Blair and John Blair were brothers and partners in business, and during their partnership, on June 13, 1899, purchased of S. S. and S. D. Lowery the southeast quarter of the Reason Green league. On December 2, 1897, they purchased from Lily Hardin, Minnie Nolen, and W. B. Nolen 324 acres of the Reason Green league in two tracts of 162 acres each, and described as lots Nos. 1 and 2, lot No. 1 being described as follows: Beginning at the northeast corner of the Reason Green league; thence W. 1,698 varas; thence south 634 varas; thence east to the river; thence up the river to beginning—lot No. 2 being just south of lot No. 1, and the south line of lot No. 2 being 733 varas south of the south line of lot No. 1. And on May 6, 1897, they purchased from W. L. Douglas and Hugh Jackson 162 acres of the Reason Green league, described as lot No. 3. This 162-acre tract lies west of lots Nos. 1 and 2, and extends from the north line of lot No. 1 to the south line of lot No. 2. On February 24, 1897, in a partition suit styled Douglas v. Reagan, wherein the north half of the Rea-

son Green league was partitioned into six lots, the three 162-acre tracts purchased afterwards by the Blairs were described as lots Nos. 1, 2, and 3. The partition decree in this suit describes the land by beginning at the northeast corner of the Reason Green league, on the west bank of the Trinity river, thence west with the north line of the league a certain distance, and from there on the calls are merely for course and distance, until the river is reached again, and thence up the river with its meanders to the place of beginning. No marked corners, monuments, or previously established lines are called for, except the northeast corner, north line of the league, and Trinity river. It appears that one R. E. Eubank, a surveyor, under employment of the commissioners of partition, in the suit of Douglas v. Reagan, surveyed out the three 162-acre tracts, Nos. 1, 2, and 3, and did actually establish the lines and corners of these surveys, but for some reason, not explained, his report setting out the surveys was not incorporated in the report of the commissioners, nor in the decrees of partition, but the decree, disregarding the work done by the surveyor, Eubank, described these three 162-acre tracts as set out above. The surveyor, Eubank, places the south line of lots Nos. 2 and 3 about 338 varas north of where defendants in error claim that it should be.

[1] The evidence clearly shows that, in all fairness, this division line should be located where defendants in error contend it is located, and where the trial court in its findings of fact actually locates the line; but plaintiff in error contends that, inasmuch as Eubank, under employment of the commissioners of partition in the suit of Douglas v. Reagan, did actually survey and locate on the ground these tracts of land, they are bound by it, and estopped thereby. With this contention we do not agree, for the reason that the decree of partition, and not the actual survey on the ground, should control, inasmuch as the decree in describing these tracts of land is in conflict with the surveying done on the ground, and for some reason totally disregards the survey as made by Eubank.

[2] Plaintiff in error further contends that at the August term, 1906, in a partition suit styled Blair v. Blair, an agreed judgment was entered, in which partition the Eubank line was recognized as the dividing line between the north half and the south half of said league; that said line was well established by marks and corners on same, and on lots Nos. 1, 2, and 3 of the Douglas v. Reagan partition suit. With this contention we do not agree. In the partition suit of Blair v. Blair there was a decree of partition entered between W. F. Blair and the heirs of John Blair, deceased, in which the three tracts in the north half of the Reason Green league known as lots Nos. 1, 2, and 3, a 400-acre tract in the Richard Green league, and 160 acres out of the northeast corner of the southeast quarter of the Reason Green league, described as being one-quarter of a mile wide and running west from the river for quantity, was set aside to the heirs of John Blair, and the southeast one-quarter of the Reason Green league, less the 160 acres out of the northeast corner of same, together with 160 acres in International & Great Northern survey No. 10, was set aside to W. F. Blair. This decree uses the same description of the three tracts Nos. 1, 2, and 3, in the north half of the league, as is used in the decree of Douglas v. Reagan, and refers to it, and the description of the southeast quarter set aside to W. F. Blair is the same as in the deed from the Lowerys to John and W. F. Blair. The trial court, in paragraph 4 of its findings of fact, sets out one of the facts found as follows:

"The court finds that said marked corner for said three tracts of land made by Eubank, the surveyor who acted for the commissioners of partition in said case of Douglas v. Reagan, were for some reason rejected by said commissioners, and not incorporated in their report, or in the partition decree of the north half of said league, and further I find that such partition of the north half of said league was made without reference to those marks which Eubank testified he made for corners, and with reference only to the true location of the north half of said league, wherever it was in fact upon the ground."

From a careful investigation of the evidence we find this finding of fact amply supported by the evidence.

[3] Plaintiff in error contends that, "if the lines and corners were marked upon the ground, that location will control," and cites Stafford v. King, 30 Tex. 272, 94 Am. Dec. 304, Jones v. Burgett, 46 Tex. 292, and Johns v. Schutz, 47 Tex. 582, and further contends that "marked lines must be followed," and cites George v. Thomas, 16 Tex. 74, 67 Am. Dec. 612, and further contends that, "when land is acquired with reference to lot numbers or surveys actually made on the ground, the survey cannot be changed," and cites Smith v. Boone, 84 Tex. 528, 19 S. W. 702. We think these contentions are correct, and squarely supported by the authorities cited, but do the facts bring this case within the rules as announced in these cases?

It is clear that, although Eubank, under employment by the commissioners of partition in the case of Douglas v. Reagan, went upon the land and actually marked upon the ground and established the lines and corners of the several tracts to be partitioned, this work was never recognized by any one, was for some reason disregarded by the commissioners of partition, and the decree of partition describes the land as claimed by the defendants in error, and found by the trial court, and not in accordance with the survey as made by Eubank.

Finding no error in the trial of this case, the judgment of the lower court is affirmed; and it is so ordered.