FINCHER JONES v. BURGETT & HICKOCK.

1. AMENDMENT—NEW CAUSE OF ACTION.—An amendment correcting the description of a call made for the beginning corner of the field-notes of a tract of land sued for, and which amendment is but a better description of the same tract of land claimed in the original petition, is not a new suit.

2. SAME—LIMITATION.—In such case, limitation is stopped by the filing of the original petition, as against the defendant.

3. SURVEY—EVIDENCE OF SURVEY.—Where it is shown that a tract of land sued for forms part of a block of surveys, the outer corners of the surveys in the block being known and identified, and from adjacent surveys the position of the land sued for is thus ascertained and fixed, such evidence of identity of the land sued for is sufficient, though no lines or corners can be found of the survey in controversy.

4. SAME—CALLS.—Where from actual corners, lines not marked are run by course and distance, and a stream is found where called for, but of a different name from that called for in the field-notes, it may be inferred that the call for the stream was a mistake, and to that extent course and distance would be regarded, instead of the call for a stream elsewhere made in the field-notes.

5. SAME.—CHARGE.—See case where judge, after instructing the jury to regard calls, 1st, natural objects; 2d, artificial marks; and 3d, course and distance, "that neither of these should absolutely control the others when that other most truly indicates to the minds of the jury the proper locality of the tract."

6. SAME.—There is no rule of law which makes a call for a natural object, under all circumstances, the controlling call, so as to preclude the consideration of other evidence as to the true locality of the land.

7. SAME.—The fact that lines of a survey were not actually run, will not invalidate a patent, provided the land can be identified with reasonable certainty; and where lines were not run, a mistake in a call for a river might occur, which, if made in a survey actually run, would be difficult to explain.

8. SAME.—That a surveyor adopted field-notes of a former survey, which were incorrect, however evidencing dereliction of duty in the surveyor, would not affect the validity of a patent upon such defective survey.

APPEAL from Kaufman. Tried below before the Hon. M. H. Bonner.

October 23, 1856, Julia Burgett, as administratrix of estate of Sidney A. Sweet, joined by her husband, sued, in trespass to try title, Fincher Jones and others, for land described as follows in the petition: "One league and one labor of land granted by the State of Texas to John C. Brooke, assignee of James S. Ramsey, on the 3d day of July, 1847, then in Nacogdoches land district, in the waters of Bois d'Arc, fork of the Trinity river—beginning at the east corner of league

and labor survey No. 38, of King's block, a stake, &c.," (giving field-notes of a square of 5,099 varas to each side.)

May 24, 1859, plaintiffs amended, alleging "that the field-notes and patent of league No. 38 calls for the lines crossing the east fork (or Bois d'Arc fork) of the Trinity river, whereas, in fact, the actual survey made upon the ground did not cross the east (or Bois d'Arc) fork, but the same is a mistake; and where said field-notes and patent call for crossing the east (or Bois d'Arc) fork of the Trinity, Musquiet creek was intended; they therefore allege that the calls in said patent to league No. 38 for the east (or Bois d'Arc) fork was in fact a mistake, and the said Musquiet was mistaken for the east fork, and so miscalled in said field-notes and patent; and the said league No. 38 of King's block being so located on Musquiet Creek, and not on the east fork of the Trinity aforesaid, and the league No. 40, beginning at the east corner of league No. 38, and the said defendants being on said league No. 40 herein sued for, they pray," &c.

May 24, 1859, defendants plead not guilty.

May, 1866, death of plaintiff was suggested, and William Burgett and H. H. Hickock allowed to become plaintiffs, showing that they were entitled to sue.

February, 1867, plaintiffs further amended, alleging that "the league and labor of land sued for, to wit, No. 40 in King's block of leagues, is one of a large number of surveys, partly in Dallas and partly in Kaufman county, known in the General Land Office, on the maps of said office, by reputation and public notoriety as "King's Block;" that said block contains a large number of leagues of land, forming a system of surveys known and designated on the maps in the public archives of the State;—in the maps in the county surveyor's office of both the counties of Kaufman and Dallas, by the numbers of said surveys and leagues in said block;—in the field-notes and patents of the respective leagues, as designated by the numbers aforesaid; and they further say, that said league and labor No. 40 occupies its appropriate place on

said maps, and its appropriate place upon the ground where actually surveyed; and the adjacent leagues thereto are known and designated by numbers aforesaid, and by marks, corners, and lines as called for in their field-notes respectively; that league No. 38 is well defined, by the calls in the patent to the same, by marks, lines, corners, and courses and distances from the same, and appears on the ground where actually surveyed; and the east corner thereof is ascertained and constitutes the west corner of league and labor No. 40 aforesaid, as sued for, &c.

The defendant excepted to the amended petition, as setting up a new and distinct cause of action, and that the land described was not that originally sued for, &c. To the amended petition they pleaded not guilty, and statutes of limitations of three, five, and ten years.

Fincher Jones was, on the final trial, the sole defendant—suit as to the others having been dismissed or abated by death. Parties intervened, but they were not before the court on this appeal.

The court, after stating the case and charging upon the title as offered by plaintiffs, further instructed the jury:

"You will next proceed to consider of the other proposition, that the plaintiffs must prove reasonably to your satisfaction that the land in controversy is the same as that embraced in the patent. Lands are usually identified by the field-notes of the same, when surveyed, also by adjacent and surrounding surveys or other artificial calls, or by natural objects, when called for in the field-notes, and are sufficiently identified. These notes and the calls therein should be sufficiently certain in description to identify the land from other surveys and from the mass of the public domain.

"The patent in this case purports to convey the land mentioned therein by certain mentioned bounds. Where these metes and bounds, are is a question of fact to be determined by the jury; and as the identity of the land is the principal question of controversy in this suit, I give you the following

as the rules of law laid down for your guidance in such cases:

"The main object of inquiry is, to ascertain the true location of the land as described in the field-notes, and the calls as therein set out in the patent under which plaintiffs claim. The patent having issued, the presumption arises that the land was actually surveyed, according to the field-notes, until the contrary is proven.

"If any of the calls therein are for perishable objects, as for bearing trees, and these cannot be found, the presumption will arise that they have been destroyed or defaced, rather than that they never existed; and if no survey has in fact ever been made, yet, if the calls in the patent for other surveys, and for natural and artificial objects, are such that thereby the land conveyed by the patent can be found and identified by other surveys surrounding the same, this, in law, is a sufficient description.

"When the lines of a survey have been actually run upon the ground, and the corners established and the lines and bearing-trees marked, these, if they can be found, constitute the true boundaries of the land; and if they, or a sufficient number of them, are shown by evidence so as to establish to the satisfaction of the jury the true location of the land, these must be respected by the jury, and must not be departed from or made to yield to course and distance or any other less certain matter of description.

"Where the testimony fails to establish to the satisfaction of the jury the locality of the land described in the field-notes, by lines actually run and marked, or by established corners appearing on the ground, or by evidence of enough of these to reasonably identify the land to the satisfaction of the jury, then you should see if you can so identify the same by evidence in regard to other calls, if any, made in the field-notes. These other calls, as a general rule, are embraced under one or more of the following three classes:

"1st. The first, and usually most important, as controlling

the others, are natural objects, such as mountains, rivers, ravines, creeks, lakes, prairies, or other fixed and immovable objects, which are generally notoriously known, or which can be easily ascertained and identified.

"2d. The second, and usually next most important and controlling, are artificial marks, such as made by man, in contradistinction to natural objects; and in surveys, to designate the work of the surveyor—as mounds, rocks, posts, stakes set in the ground to mark corners, chops, hacks, blazes, crosses, letters, &c., upon line and bearing trees.

"3d. Usually, the least important of calls are those for course and distance, which are the direction of the lines of the survey, with regard to the cardinal points of the compass, and the length of the same as called for in the field-notes.

"As a general rule, these three classes are important in the order in which they are named, as 1st, 2d, and 3d; but neither of these should absolutely control the other, when that other most truly indicates, from the testimony, to the mind of the jury, the proper locality of the land in the particular case."

Verdict and judgment for the plaintiffs. Motion for new trial was overruled, and Jones appealed.

*T. J. Word*, for appellant, carefully discussed the facts, citing and discussing Ayers *v.* Cayce, 10 Tex., 99; Urquhart *v.* Burleson, 6 Tex., 502; Stafford *v.* King, 30 Tex., 273; Hubert *v.* Bartlett, 9 Tex., 104.

*R. F. Slaughter*, also for appellant.

*J. C. Robertson*, for appellees.

GOULD, ASSOCIATE JUSTICE.—This suit was commenced, October 23, 1856, to recover "one league and labor of land, granted by the State of Texas to John C. Brooke, assignee of James S. Ramsey, on the 3d day of July 1847, then in

Nacogdoches land district, on the waters of the Bois d'Arc fork of the Trinity river, beginning at the east corner of league and labor survey No. 38 of King's block, a stake for first corner," setting out the field-notes, showing the survey to be a square. By an amended petition, filed May 24, 1859, it was alleged that the field-notes of league No. 38, by mistake, call for lines crossing the east fork, or Bois d'Arc fork, of the Trinity river, instead of Mesquite creek. In a subsequent amendment, it is alleged, that King's block contains a large number of leagues of land, forming a system of surveys, known in the land office and on the public maps, the respective surveys being designated by numbers in regular succession; and the league and labor sued for is further described as No. 40, in this block, and is alleged to occupy its appropriate place on the public maps, and upon the ground where actually surveyed; that the adjacent leagues are known by their marks, corners, and lines, and that league No. 38 is well defined by lines, corners, and courses, the east corner thereof—the beginning corner of league No. 40—being ascertained.

The defendant claimed a portion of the land sued for, relying mainly on the ten years' statute of limitation, and on the failure of plaintiffs to identify the land claimed.

There was a verdict and judgment for plaintiffs, from which defendant has appealed.

The evidence as to whether defendant's possession commenced in 1846 or 1847 is conflicting, and certainly is not such as would justify us in disturbing the verdict of the jury.

It is claimed that the amendment, alleging the mistake in the field-notes of No. 38, amounted to a new suit, and that the running of the statute did not stop until this amendment was filed. The statement which has been made of the pleadings is sufficient to show that the original and amended petitions claim the same land, and that the position taken by appellants cannot be sustained.

On the trial it appeared that no marked lines or corners of

league 40 could be found. There was evidence of a general correspondence in the character of the country called for in the field-notes and found at the respective corners of the land claimed. For example: the beginning corner is placed in a small prairie, as called for, and the course and distance then place the other corners in prairie or in timber, also as called for. The second corner was sought to be established by a lone tree, called for in the field-notes, and by the fact that in surveys made for defendant and others at different times after 1851, that corner of the league is called for and treated as known.

The plaintiffs also sought, and we think successfully, to show that the outer corners of a number of the adjacent leagues were identified, and that from these adjacent surveys the position of the league sued for was ascertained and fixed. This may often be the only method of establishing the location of a survey in a region consisting, as in this case, largely of prairie land. Competent surveyors testified, that by this method they could find any of the leagues in the block, including the league sued for. The evidence disclosed that the field-notes of league No. 38 called for the east fork of the Trinity; whereas, if the east corner of league 38 and beginning corner of league 40 is where it was claimed to be by plaintiff, the east fork is several miles to the eastward, and would in fact be crossed by two of the lines of league 40, though the field-notes of league 40 contain no calls for the river.

On the part of appellants, it is contended that the calls for such a natural object as a river control all other calls; that the lines of No. 38 must be extended so as to reach the river called for, and that consequently the east corner of 38 and beginning corner of No. 40 must be fixed so far to the eastward of the point claimed by plaintiffs as to leave defendant on land not within the bounds of league 40. The plaintiffs introduced evidence of the locality of the south and west corners of league No. 38, and then by measurement the correct

distance called for fixed the beginning corner. The evidence was, that Mesquite creek was found where the east fork was called for, but that the difference in the streams was so great that no surveyor would mistake one for the other. The court instructed the jury in regard to calls for: 1st, natural objects; 2d, artificial marks; and, 3d, course and distance; "that neither of these should absolutely control the other, when that other most truly indicates from the testimony to the mind of the jury the proper locality of the land." ' Under the evidence, we think the charge given was correct and appropriate. There is no rule of law which makes a call for a natural object, under all circumstances, the controlling call, so as to preclude the consideration of other evidence as to the true locality of the land. (Booth *v.* Upshur, 26 Tex., 64; Booth *v.* Strippleman, 26 Tex., 436.)

King's block, consisting of one hundred and fifteen leagues, joining, or at least purporting to join, a solid block of squares with common corners, was surveyed by a company of three surveyors in 1840, Terrell and Casey being two of the company. Many of the certificates proving fraudulent, the surveys became vacant. The survey of league 40, on which it was patented, purports to have been made by Terrell, in 1844. The identity of the field-notes with those of the survey in 1840 and the evidence of Terrell, make it probable that he simply adopted the field-notes of Casey, who purports to have made the original survey. The evidence makes it quite probable that in surveying King's block, all the lines were not run. There is no positive evidence on the subject, but circumstantial evidence points strongly to the conclusion that only some of the lines were actually run out. If such were the fact, it would not invalidate the patent, provided the land can be identified with reasonable certainty. (Stafford *v.* King, 30 Tex., 273, and cases there cited.) And, if such were the fact, it is evident that a mistake in a call for a river might occur, when, if the survey were actually made, it would be more difficult to explain. The evidence in this

case is amply sufficient to support the verdict of the jury, establishing, that there was a mistake in the field-notes of league No. 38, and that the beginning corner of league 40 was where it was claimed to be by plaintiffs.

It is claimed that there was error in excluding the evidence of Lacy, a chain carrier, who was with Terrell in making surveys in that region in 1844, to the effect that this league and labor was not then surveyed by him. It is not material to inquire whether this evidence was correctly excluded, as contradicting the recorded survey, on which Lacy's name did not appear as a chain carrier. If it had been established that Terrell made no survey at that time, or at any other, but simply adopted the field-notes of a former surveyor, this might show, if Terrell did not know that the field-notes adopted were correct, that he was derelict in his duty, but could not affect the validity of the patent. Nor do we think that the averments of the plaintiffs were such as to require them to prove that there was an actual survey.

The evidence in the case is voluminous, and it has not been attempted in this opinion to even allude to any other than such parts of it as were necessary to show the points decided.

The intervenor did not appeal, and we have not therefore considered errors assigned by him.

There is no error in the judgment, and it is accordingly affirmed.

AFFIRMED.