**PETTY et al. v. PAGGI BROS. OIL CO. et al. (No. 451–3836.)** *

(Commission of Appeals of Texas, Section A. Oct. 10, 1923.)

1. **Boundaries** ⬅️37(3)—**Finding locating corner sustained by evidence.**

Evidence *held* to sustain finding locating the southwest corner of one tract and then locating the southwest corner of another tract by calls for courses and distances from the southwest corner of the former.

2. **Boundaries** ⬅️3(9)—**Excess held to inure to grantee whose tract was not surveyed.**

Where plaintiffs claimed the superior title to a tract of land and in settlement of a dispute as to ownership a 15-acre tract thereof, surveyed and described by calls for definite objects and bearings so that its boundaries were not left in doubt was conveyed to them, and the calls in the deeds for the other portions of the tract conveyed to others indicated the absence of a survey, and that the field notes were arrived at by computation, *held* that plaintiffs were entitled only to the 15 acres described in their deeds, and that an excess inured to another grantee.

3. **Boundaries** ⬅️10—**Where corner can be located from another established corner, recourse to field notes of other surveys not permissible.**

Where the field notes of a survey were complete, definite, and certain, and one corner was definitely located, and two other corners not in dispute so that its boundaries could be determined accurately from its own calls, there was no justification for recourse to the field notes of other surveys to create an inconsistency in the calls.

4. **Boundaries** ⬅️33—**Burden of proof on plaintiffs to show disputed land within their boundaries.**

Where plaintiffs asserted that land in dispute was included within the boundaries of a tract owned by them, theirs was the burden of proof.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by V. A. Petty and others against the Paggi Bros. Oil Company and others. From a judgment of the Court of Civil Appeals (241 S. W. 574), affirming a judgment for defendants, plaintiffs bring error. Affirmed.

Sonfield, Noll & King and Oliver J. Todd, all of Beaumont, for plaintiffs in error.

C. A. Lord and Thos. J. Baten, both of Beaumont, for defendants in error.

GERMAN, J. Plaintiffs in error here were plaintiffs in the trial court, and will be designated as in that court. They brought suit against defendants in error in the form of trespass to try title to recover a 20-acre tract of land in Hardin county, Tex., known as the Herrington tract, being a part of the C. F. S. Jordit survey. They also sought to recover a large sum for the value of oil taken from the land in controversy. We will also designate the defendants in error as in the trial court. While plaintiffs sued for the entire 20-acre tract, yet they in fact contended only for the balance of that tract, after allowing for a 4-acre tract and a 1-acre tract theretofore conveyed by them, as hereinafter shown. The suit resolved itself largely into a controversy over boundaries, the main contention being the location of the east line of the 1 acre, and whether or not a supposed excess in acreage of about three-fourths of an acre should be considered a part of that tract. The description of the 20 acres is of much importance in a consideration of the case. That tract is thus described:

"Beginning in the south boundary line of a 320-acre survey in the name of C. F. S. Jordit, at a point directly south of the southwest corner of a survey of 35½ acres made out of the said Jordit for G. W. Taylor and now owned by W. F. Cotton; thence east 428 varas to stake for corner, from which a holly 5 in dia. brs. S. 75° E. 5 vrs.; thence north to the south boundary line of the G. W. Taylor or Cotton survey, stake for corner; thence west with the south boundary 35½ acre survey 428 varas to corner; thence south to the place of beginning."

On October 10, 1903, plaintiffs were the owners of the above-described tract of land under the Jordit title. On that date Marie Ogden, O. S. Kennedy, and others were the owners of the Ximines grant, and claimed it to be in conflict with the 20 acres. The record does not disclose whether or not there was in fact a conflict, but for the purpose of this case we will assume that there was no conflict, and that plaintiffs were, on the date named, the true owners of the 20-acre tract. The conflicting claims resulted in a settlement, and Marie Ogden and others holders of the Ximines title, on the date mentioned, conveyed to plaintiffs 15 acres of the 20-acre tract, thus described:

"A tract of fifteen (15) acres of land, being the eastern fifteen (15) acres of and a part of the twenty (20) acres on the south boundary line of the said C. F. S. Jordit survey which was conveyed by H. B. Mitchell to B. F. Herrington by deed dated the 26th day of December, 1896, which deed is recorded in Book S on page 457 of the deed records of Hardin county, state of Texas, said deed and the record thereof being hereby referred to for a full description of the said twenty acre tract. The said fifteen (15) acre tract of land hereby conveyed out of said twenty acre tract is described as follows: Beginning at an iron pipe in the south line of said Jordit survey at the southeast corner of said twenty (20) acre tract from which a holly 5 inches in dia bears S. 75° E. 5 varas; thence west with the south

boundary line of said Jordit survey 321 varas to an iron pipe for corner; thence north 264 varas to an iron pipe in the south line of a 35½ acre survey made for G. W. Taylor on said Jordit survey; thence east with the south line of said G. W. Taylor tract 321 varas to an iron pipe at the northeast corner of the said twenty acre tract; thence south with the east boundary line of the said twenty acre tract 264 varas to its southeast corner the place of beginning."

On the same date plaintiffs conveyed to Marie Ogden and others 4 acres of land, being the western 4 acres of said 20-acre tract, and thus described:

"Beginning at the southwest corner of said twenty-acre tract; thence east with the south boundary line of the said Jordit survey and said twenty acre tract eighty-five and three-fifths (85⅗) varas to a point in said line; thence north 264 varas to the south line of a thirty-five and one-half (35½) acre survey on said Jordit survey made for G. W. Taylor, and being also in the north line of said twenty acre tract; thence west with the south boundary line of the said G. W. Taylor survey and the north line of said twenty acre tract 85⅗ varas to the northwest corner of said twenty acre tract, which is also the southwest corner of said Taylor survey; thence south with the west line of said twenty (20) acre tract 264 varas to its southwest corner the place of beginning."

Plaintiffs on the same day conveyed to O. S. Kennedy a 1-acre tract between the 4 acres and the 15 acres, and this tract was thus described:

"The said one (1) acre of land hereby conveyed out of said twenty (20) acre tract is described as follows: Beginning at a point on the south boundary line of the said C. F. S. Jordit survey and of said twenty acre tract, which point is 85⅗ varas east of the southwest corner of said twenty (20) acre tract; thence east with the said south boundary line twenty-one and two-fifths (21⅖) varas to another point on the said south line of said twenty acre tract and of said Jordit survey, which point is the southwest corner of a 15-acre tract out of said twenty acre survey which has been conveyed by said O. S. Kennedy and others to the vendors herein; thence north with the west line of the said fifteen (15) acre tract 264 varas to the north boundary line of said twenty (20) acre tract and the south boundary line of the G. W. Taylor 35½ acre survey on said Jordit survey; thence west with the division line of said twenty-acre tract and said Taylor tract twenty-one and two-fifths (21⅖) varas to a point on said line; thence south with a line parallel to the east and west lines of said twenty acre tract and of said Jordit survey 264 varas to a point on the south line of said twenty acre tract the place of beginning."

Defendants own title to the Kennedy 1-acre tract, and claim that if there is an excess it is in this tract, and that the oil wells are located on it. Plaintiffs claim that the excess is in their 15-acre tract and that the wells are located on it. The trial court ren-

dered judgment in favor of plaintiffs for the particular 15 acres above described, but gave judgment in favor of defendants for the particular land in dispute, holding it to be included within the boundaries of the 1-acre tract. This judgment was affirmed by the Court of Civil Appeals (241 S. W. 574), but that court did not agree with the trial court on certain holdings made by it.

It is claimed by plaintiffs that the Herrington 20 acres is a part of the Mitchell 30 acres, and that its southwest corner is the same as the southwest corner of the Mitchell tract. There is nothing in its field notes to indicate that this is true, except its connection with the Taylor 35½ acres. It seems to be undisputed that the southeast corner of the Mitchell 30 acres and its northeast corner, which is the Taylor southeast corner, are now definitely located on the ground. It is also admitted by all parties that the southeast corner of the 20 acres is well identified on the ground, being marked by an iron pipe and a holly tree. In their petition for writ of error plaintiffs say:

"It is the contention of these plaintiffs in error that the southwest corner of the Herrington twenty (20) acre tract, which is identical with the southwest corner of the Mitchell thirty (30) acre tract, has not been identified by any witness, nor is the point of the original location of said corner proven, and same cannot now be determined, except by course and distance from the southeast corner of said Mitchell tract, which is the southeast corner of the survey, and is a well marked and identified corner."

Their whole theory of the case is based on this proposition. The distance from the southeast corner of the Mitchell tract to its southwest corner is called to be 781 varas. They seek to locate the southwest corner of the 20-acre tract at a point 781 varas west of the southeast corner of the Mitchell tract. Taking this point as the southwest corner of the 20 acres, the distance to its southeast corner at the holly tree is 443.5 varas, instead of 428 varas as called for. With the southwest corner of the 20 acres thus established, they claim the Ogden 4 acres is located by beginning at this southwest corner and running east 85⅗ varas to its southeast corner. The Kennedy 1 acre is then established by beginning at this point 85⅗ varas from the southwest corner and running east 21⅖ varas for its southeast corner as called for in its field notes. They claim that the southwest corner of the 15-acre tract is at this point, which in 338.5 varas west from the southeast corner of the 20-acre tract, instead of 321 varas as called for in its field notes. If this method of locating the Kennedy 1 acre is adopted, the oil wells will not be on this tract, but will be east of its east line.

It is undisputed that the southwest corner of the Taylor 35½-acre tract cannot now be identified by anything called for in its field

notes, and plaintiffs would locate it by course and distance 781 varas west from its southeast corner. However, the trial court adopted for this corner a point identified by the witness Cotton, who owned the west part of the Taylor tract, as its true southwest corner, and located the southwest corner of the Herrington 20 acres due south of this point. The corner thus found by the trial court is 436.4 varas west of the southeast corner at the holly tree. It is admitted that at both of these locations of the southwest corner of the 20 acres there is now nothing to indicate its original location. The trial court confined the boundaries of plaintiffs' 15 acres to its actual calls. It located the Ogden 4 acres by beginning at the southwest corner .of the 20 acres established by him and running east 85⅚ varas for its southeast corner. It then awarded to defendants the strip of land between the 15 acres and the Ogden 4 acres, which he found to be 29.8 varas wide, instead of 21.4 varas wide, as called for in the deed to Kennedy. By this location the oil wells were found to be on the Kennedy tract.

[1] The finding made by the trial court that the point designated by the witness Cotton was the true southwest corner of the Taylor tract is upheld by the Court of Civil Appeals as being supported by the evidence. Plaintiffs vigorously contest this finding upon the ground that there is no evidence to sustain it. We have carefully read and studied the testimony of the witness Cotton, as well as all the other evidence in the record, and find that there is sufficient evidence to support this finding.

However, as stated above, adopting this corner, thus found, as the proper point from which to locate the southwest corner of the Herrington 20 acres, the Kennedy tract is given a width of 29.8 varas, instead of 21.4 varas, if the 15-acre tract is confined to its boundaries as called for in its field notes, and its west line is taken as the east line of the Kennedy tract. We have concluded, from a consideration of the different conveyances, in the light of the surrounding circumstances at the time they were made, that it was the intention of the parties to convey to Kennedy all of the Herrington tract not included in the 15-acre tract and the 4-acre tract; or at least it was intended that the Ogden and Kennedy tracts should include the balance of the 20 acres after the conveyance of the particular 15 acres to the plaintiffs.

[2] We do not think it particularly material whether the Herrington 20 acres was actually surveyed as a basis for the three deeds of October 10, 1903, or not, as one thing seems to have been prominently in the minds of the plaintiffs at the time these deeds were executed. There seems to have been but little doubt that they were the owners of the superior title to the 20 acres, or at least

they so regarded themselves, and in order to fully protect their rights in the settlement they were making, and definitely identify the land they were to receive, the 15 acres conveyed to them was specifically and accurately described, with calls for definite objects and bearings, so that its boundaries might not be left in doubt; and a description was incorporated in their deed which guaranteed to them their full acreage, provided there was that amount in the tract, and regardless of the true acreage. The calls for bearings at the beginning corner and for iron pipes at each of the four corners indicate that an actual survey was made of this tract. However all of the calls in the other deeds indicate that these two tracts were not surveyed, and their field notes were evidently arrived at simply by computation, having due regard, however, for the boundaries of the 15 acres. The same uncertainty as to the actual location of the southwest corner of the tract no doubt existed at the date of these deeds as at the time of the trial of this case. This being true, the parties adopted the most logical method of disposing of the balance of the survey, after allowing a definite 15 acres to plaintiffs, by calling for the southwest corner and west line of the tract on the west and for the southwest corner and west line of the 15 acres on the east. It is therefore apparent from all the circumstances that plaintiffs intended to secure to themselves by the settlement a definite 15 acres off the east end of the 20-acre tract, leaving the balance to fall to the other parties. No doubt they considered that there were only five acres, or less, remaining; but, after obtaining their specific interest, they were willing for the balance to go to the other parties; and it seems to have been the further intention that Marie Ogden and others were to have 4 acres on the west, and Kennedy was to receive the balance remaining between that 4 acres and the west line of the 15-acre tract. It is true it is called to be only 21.4 varas wide, but the call for the southwest corner and the west line of the 15 acres is conclusive evidence of the fact that the parties thought that was all that remained, and it was their intention to appropriate this to the Kennedy deed.

The southeast corner of the 15 acres being definitely established, and its south, east, and north lines being identified, its boundaries can be accurately delineated on the ground, just as the trial court has found them to be. We therefore think the trial court and the Court of Civil Appeals were correct in their conclusions that defendants were entitled to recover the land in controversy, even though there was an excess of 8 varas in the width of the Kennedy tract, according to the findings of the trial court.

[3] But if it be admitted that these findings and conclusions of the trial court are without support in the evidence, it seems to us

that the case can be very satisfactorily disposed of upon another theory. The field notes of the Herrington 20 acres are complete, definite, and certain, and contain no reference to the Mitchell 30 acres. The southeast corner of the 20 acres is definitely located, and there seems to be no dispute about the location of its northeast corner and its south, east, and north lines. Its boundaries can be determined accurately from its own calls. When this can be done there is no justification for recourse to the field notes of other surveys. The southeast corner of this tract, being found and clearly identified, is of more importance than the beginning corner, which cannot be identified on the ground, as a basis from which to locate the lines and other corners. Where the field notes of a survey are complete in themselves, and one corner can be located by course and distance from another established corner, it ought to be so established, and it is not permissible to look to the field notes of another survey to create an inconsistency in the calls. Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931; Davis v. Smith, 61 Tex. 21; Upshur County v. Lewright (Tex. Civ. App.) 101 S. W. 1013; Reast v. Donald, 84 Tex. 653, 19 S. W. 795; Polk v. Reinhard (Tex. Civ. App.) 193 S. W. 687.

It being admitted by all parties that there is nothing on the ground to indicate the original location of the southwest corner of the 20-acre tract, and that it is necessary to resort to course and distance from some other point to determine its location, certainly the most reliable and obviously proper point from which to so locate it is the southeast corner of the 20 acres itself. This is true, not only because it is a well-established corner of the very tract to be located, but it is the least remote of all the points from which it is sought to locate the southwest corner. Clarke v. Klein (Tex. Civ. App.) 166 S. W. 1179; Standefer v. Vaughan (Tex. Civ. App.) 219 S. W. 490. Besides, to thus locate the southwest corner of the 20 acres, each of the three tracts will have their appropriate acreage and practically all of the calls in each of the deeds will be perfectly harmonized. The fact that the southwest corner of the Taylor or Cotton tract must first be located by course and distance from the southeast corner of the Taylor tract (taking plaintiffs' theory of the case), makes it far less reliable as a point from which to locate the southwest corner of the 20 acres by course and distance than the undisputed and recognized southeast corner of the 20 acres itself.

[4] The burden of proof was on the plaintiffs to show that the land in dispute was included in the boundaries of the tract owned by them. To entitle them to recover it was necessary for them to show that the southwest corner of the Herrington 20 acres was more than 428 varas west of its southeast corner. To do this they must establish the corner, or show by sufficient proof its previous location with such certainty as would authorize an extension of the south line beyond the distance called for. Williams v. Winslow, 84 Tex. 371, 19 S. W. 513; Stein v. Roberts (Tex. Civ. App.) 217 S. W. 166. If it should be admitted that there is no evidence of the location of the southwest corner at the points found by the trial court, then there is absolutely no proof to authorize an extension of the south line beyond a point 428 varas from the southeast corner.

We recommend that the judgment of the Court of Civil Appeals and of the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.