**SWEARINGEN et ux. v. BROWN et al.**

**No. 4364.**

Court of Civil Appeals of Texas. Beaumont.

May 30, 1946.

Rehearing Denied July 10, 1946.

Grover C. Lowe, of Woodville, for appellants.

J. E. Wheat, of Woodville, for appellees.

COE, Chief Justice.

The appellants filed suit in the district court of Tyler county in the form of trespass to try title, which resolved itself into a boundary suit involving the location of the line between the tract of land owned by appellants and the tract owned by appellees. The case was tried before a jury and upon its verdict judgment was rendered against appellants on the contention of the boundary issue. From this judgment the appellants have properly prosecuted their appeal to this court.

By appellants' first nine points, they in substance complain of the action of the trial court in not holding as a matter of law that the boundary line between the land owned by appellants and appellees was the line contended for by appellants, and that the verdict of the jury in finding in favor of the appellees is not supported by the evidence. With these contentions we are unable to agree. The statement of facts in this cause contains some 672 pages and it will therefore be impracticable to undertake to make a full statement of the evidence therein contained. It is in substance as follows: The Josiah Wheat survey in Tyler County, Texas, was patented on November 24, 1848. At the death of Josiah Wheat, his estate was partitioned and a 312 acre tract of the Josiah Wheat survey, described by metes and bounds, was allotted to John Wheat. On November 6, 1856, M. Priest conveyed to L. A. Cook a 200 acre tract out of the Josiah Wheat survey, which was described by metes and bounds as follows:

"Beginning at a stake on the Town Line from which a Pine marked X bears N 28 West 7 vrs. distant and another pine mkd. X bears N 18 W 13 vrs. distance.

"Thence North with the West boundary line of said Town of Woodville at 855 vrs. to the N. W. corner of said town survey 1816 vrs. to a stake on the N. boundary line of said Wheats survey from which a gum marked P. brs. S. 15 E. 1 vr. a Holly marked X bears N. 20 W 3 vrs.;

"Thence S. 89 deg. 40' West 1118–5/10 vrs. to a stake from which a gum marked X bears S 64 deg. W 4–5/10 vrs. a white oak marked X brs. N 42 E 4 grs.;

"Thence S. 1580 vrs. cross a creek course South East at 1615 vrs. a stake from which a pine marked X brs. N 60 West 2 vrs. and another Pine marked X brs. N 20 E 1 vr.;

"Thence East at 40 vrs. cross the same creek 1118–5/10 vrs. to the beginning."

On December 30, 1871, John Wheat conveyed to James Wheat 200 acres of his 312 acre tract, described by metes and bounds. The land here in controversy is a part of said 200 acre tract, said 200 acre tract being described in such deed as follows:

"Beginning at the South West corner of a survey or tract of land sold to Lemuel Cook at a stake Ell cor. from which a pine 24 in. in dia. brs. W. ½ vr. ——— a pine 30 in. dia. brs. S. 15 deg. E. ½ vr. dist.

"Thence E. on S. line of Le Cooks and A. Youngs Survey to the S. E. corner of Lot ——— owned by W. G. Hamilton (1130) eleven hundred and thirty varas a stake for cor.;

"Thence S. (212) two hundred and twelve varas to N. line of a tract owned by W. T. Hyde a stk. from which a black gum 36 inches in dia, brs. w. 3 vrs. dist.;

"Thence W. on N. line of said tract owned by W. T. Hyde and another owned S. S. Frazier at (2055) two thousand and fifty five varas W. line of said Joshia Wheat survey a stk. from which a pine 24 in. in dia. brs. N. 55 E. 5 vrs.;

"Thence N. on W. line of said Josiah Wheat's survey at (961-5/10) Nine Hundred and Sixty One and 5/10 vrs. corner stake from which a Magnolia 16 in. in dia. brs. N. 6 vrs. and a Magnolia 14 in. dia. brs. N. 75 deg. W. 7 vrs. dist.;

"Thence E. at (925) Nine Hundred and Twenty Five vrs. W. line of said L. Cooks, tract or corner stake.

"Thence S. on W. line same at (749-5/10) seven hundred and forty nine and 5/10 vrs. the place of beginning containing (200) two hundred acres of land more or less. Bearings mkd. X."

On April 11, 1881, James Wheat conveyed to W. D. Hyde 42 acres of said 200 acre tract, being the L shaped portion of said tract lying immediately south of the L. A. Cook tract, described as being 212 varas wide north and south, and 1130 varas long east and west.

Thereafter, the date not being shown, James Wheat subdivided the remainder of the 200 acre tract conveyed to him by John Wheat into 16 ten acre lots, beginning with lot No. 1 in the southeast corner, said lots being 235 varas wide east and west and 240 varas north and south.

On March 24, 1884, James Wheat conveyed lot No. 2 to E. G. Geisendorf by the following description:

"Beginning at the N. E. corner of Block No. (1) One.

"Thence West on North line of Block No. One (235 varas) two hundred and thirty five varas and corners with Block No. (1) a dogwood 85 E. 2 varas. dist. and a pin oak N. 87 W. 4-½ vrs. dist.

"Thence North (240) vrs. to a stake N. W. corner of this Block No. (2) a magnolia S. 70 W. 4 vrs. dis.

"Thence E. 235 vrs. a stake N E corner a pin oak bears E. 1 vr.

"Thence South (240) vrs. to the beginning, containing (10) acres of land, more or less."

Lot No. 1, which is herein sued for by appellants, was conveyed by James Wheat to A. M. Rock by deed dated February 14, 1885, and was described by metes and bounds as follows:

"Beginning at 28 vrs. N. of L. A. Cook corner at a stake on the West bank of little Turkey creek for the N. E. corner of the tract hereby conveyed a Magnolia marked X due East 1 vara and a pine 36 in. in dia. brs. S. 21 deg. W. 3 vrs.

"Thence S 28 vrs. said Cook's corner two dead pine stumps original bearings at 240 vrs. to a stake on the South line of James Wheat 200 acre survey from which a Magnolia brss. N. 40 deg. W. 1 vara and an Iron Wood South 60 deg. W. 1 vara.

"Thence West on said line at 235 vrs. stake from which a White Oak 36 in. dia. S. 60 deg. W. 4 varas a Bay 15 in. in dia. brs. No. 54 W. 6 vrs.

"Thence North at 320 varas Livingston Road at 240 vrs. N. W. corner of the land hereby conveyed a dog wood brs. 85 deg. 2 vrs. and a pin oak N. 87 deg. W. 4-½ vrs.

"Thence East 60 vrs. said road at 235 vrs. the place of beginning containing ten acres and being part of the Josiah Wheat grant situated about 1 mile West of Woodville in said State and County."

The controversy in this suit is over the proper location of the division line between lot No. 1 and lot No. 2 above described, the appellants contending that such line is located beginning at a point 28 varas north of a point on the ground which their witnesses identify as the southwest corner of the L. A. Cook tract, thence running west a distance of 235 varas. The contention of appellees is that said line is a line some 25 varas south of the point contended for by appellants, running west from the Henry Swearingen northeast fence corner. Appellants' witness Hyde, who is a state licensed surveyor of 35 years experience, testified that he had known the location of the southwest corner of the Cook survey as called for in the deed from M. Priest to Cook for some 53 years, that when he first became acquainted with this point on the ground that the witness trees called for were not standing but that he found the stumps of such trees at the proper course and distance called for in such deed, and that since the filing of this suit he had gone to that corner and had dug down into the stump holes of such trees and found the tap roots of pine trees. There were other witnesses who corroborated the testimony of the witness Hyde as to the location of said stumps and the finding of pine roots in the stump holes. On the other hand there were witnesses for ap-

pellees who testified that the wood removed from such holes was not pine roots but the wood removed from one of such holes was hardwood and that the sample of wood removed from the other supposedly stump hole, in their opinion, was not portions of pine roots. The witness Tom Hyde testified that he first surveyed lot No. 2, claimed by appellants, in about 1916, and that he began at a point 28 varas north of his location of the southwest corner of the Cook tract, which will be referred to as the Cook corner, at which time he found a small Magnolia tree on the bank of Little Turkey creek, at said point, but that he did not remember whether or not it had any surveyor's marks on it, and from that point he ran west 235 varas, at which point he did not find the pin oak and dogwood trees called for in the description of lots Nos. 1 and 2, nor any marked trees along the line. Other witnesses for the appellants testified that as late as 1920 that the dogwood and pin oak tree called for at the northwest corner of lot No. 1 and the southwest corner of lot No. 2 were standing and that marked trees were found along the line extending east to the northeast corner of lot No. 1 where a Magnolia tree marked X had once stood but which had caved into the creek in about 1925 when they had a flood. The witness Hyde testified that he ran down the west line of lot No. 1 from its northwest corner as located by him to the established and well-recognized southwest corner of lot No. 1, which is located on the south line and at the southwest corner of the James Wheat tract, thence east on the south line of said tract to the southeast corner of lot No. 1, which is also well recognized and about which there is no dispute; that in surveying lot No. 1 he found the same to be 265 varas north and south instead of 240 as called for, and 235 varas east and west. Said witness accounts for the excessiveness in the length of the north and south lines of lot No. 1 by saying that in his opinion the east and west line of that portion of the James Wheat tract which was subdivided were excessive in length, thereby giving to lot No. 1 an excess in acreage. Other witnesses, who were surveyors testifying for appellees, testified that the west

line of the James Wheat tract which was subdivided measured on the ground the length called for in the field notes and that the east line of said tract was some 8 varas short of the field note calls. They further testified that by placing the north line of lot No. 1 as contended for by appellees, that the calls for the Woodville and Livingston road, which ran across said tract from the northeast to the southwest, on the north line of lot No. 1, would check, but to move the line north as contended for by appellants, such calls would not check, and further that the road was in substantially the same location as it had always been. The appellants, and some of their witnesses, testified that they had seen similar trees as called for in the field notes of lots Nos. 1 and 2, at substantially the location as contended for by appellants. The appellants' witness, Tom Hyde, who surveyed the lot in 1916, testified that at that time he did not find any of the marked trees called for in the field notes, while one of appellants' witnesses in locating the dogwood and pin oak tree called for in the field notes of lot No. 1, located same substantially at the point contended for by appellees.

It will be noted that the bearing trees called for in the deed from John Wheat to James Wheat as being the southwest corner of the L. A. Cook tract are at a different distance and direction from the corner than those called for in the deed from M. Priest to L. A. Cook, and appellants' witness Hyde testified that he had never located the bearing trees on the ground called for in the deed from John Wheat to James Wheat as being the southwest corner of the L. A. Cook tract. Other surveyors testifying for appellees testified that they had surveyed lot No. 2, owned by appellees, while they did not find the original corners and bearing trees they did find evidences of old fences on the division line between the subdivisions and a fence along the north line of lot No. 2, with marked trees for bearings at the northwest corner of lot No. 1 at a distance called for when beginning at the south line of lot No. 2, as claimed by appellees. About 1927 appellants built a fence along the northern side of their property, which fences remained at the

same place until this controversy arose some two or three years ago. There is an iron stake and a pine post inside the corner of appellants' fence. No witness seemed to know how long these two markers have been there, or who placed them there. Carl Griffin, a witness for appellants, testified that he helped build the fence around the appellants' property and that in building the fence from the southeast corner north they were forced to stop before they reached what he took to be the north line because of a pond of water, that such point was some 8 feet south of what he took to be the north line of lot No. 1, and from that point they built the fence as nearly west as they could. Other witnesses testified as to cutting timber for the owners of lot No. 2 and that the timber was cut as far south as appellants' fence line without any protest from appellants. The evidence further shows that lot No. 2 was subdivided into two tracts and that thereafter an easement was granted by the then owners to the Gulf State Utilities Company for a high line across their property, and the field notes for such high line fixed the south boundary of lot No. 2 at the location contended for by appellees. Appellants also granted an easement to the same company, and the field notes thereof fixes the north line of lot No. 1, in accordance with appellees' contentions.

There is also testimony in the record to the effect that where the east line of the Cook tract crosses Little Turkey creek in the vicinity of the northeast corner of lot No. 1, and the southeast corner of Lot No. 2, the said creek had changed its course from time to time, that there was flat level land for 100 feet, or more, in which the stream of the creek may have meandered around them, that the soil is alluvial and there is a slough near the southwest corner of the Cook tract, and that where the east line of said Cook tract crosses Little Turkey creek that the creek runs nearly south instead of southeast as called for in the field notes of the Cook tract; that by beginning at the northwest corner of the Cook tract and running the distance called for in the deed for the west line that you would reach a point 21 varas south of the stump holes testified about by

the witness Hyde. The evidence further justifies the conclusion that by adopting the location of the division line between lots Nos. 1 and 2, as contended for by appellees, that the several lots of the Wheat subdivision retain their proper positions and their full quota of acreage while by adopting the theory of appellants as to the location of said line the south tier of lots would be excessive in acreage at the expense of the lots to the north. Appellants' contentions rest solely upon the witness Hyde's location of what we term the Cook corner, which he locates 265 varas north of the south line of the James Wheat tract instead of 212 varas as called for in the field notes, and by beginning 28 varas north of that point it results in lot No. 1 being 265 varas north and south instead of 240 acres as its field notes called for. It is of some significance that in the deed from John Wheat to James Wheat, and in the deed from James Wheat to Hyde, conveying the 42 acres of the James Wheat tract lying just south of the Cook tract, that the Cook corner is described as being a stake from which a pine 24 inches in diameter bears west one-half vara and a pine 30 inches in diameter bears south 15 degrees east one-half vara while the deed from Priest to Cook described said corner as being a stake from which a pine marked X bears north 60 degrees west 2 varas and a pine marked X bears north 20 degrees east one vara. No witness undertook to identify the point on the ground described in the deeds from John Wheat to James Wheat and from James Wheat to Hyde, and called to be the southwest corner of the Cook tract, which according to the field notes was 212 varas north of the south line of the James Wheat tract. The point called for in the deed from Priest to Cook, as located by the witness Hyde, is 265 varas north of the south line of the James Wheat tract. There is other evidence in the record, which we will not undertake to set out, which justified the trial court in refusing to hold as a matter of law that the north line of lot No. 1 is located as contended for by appellants, and is sufficient to support the finding of the jury that said line is located as contended for by appellees. Phillips Pet. Co. v. State, Tex. Civ.App., 63 S.W.2d 737, 743; Taylor et.

al. v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288; Stafford v. King, 30 Tex. 257, 94 Am.Dec. 304; Kyle v. Clinkscales, Tex.Civ.App., 22 S.W.2d 729; Temple Lumber Co. v. Felts, Tex.Civ.App., 260 S.W. 228. There is also sufficient evidence in the record justifying the trial court in submitting to the jury special issue No. 3, inquiring of the jury whether the parties hereto, and their predecessors in title, have considered, recognized and acquiesced in the line identified as a line running west from the Henry Swearingen northeast fence corner; to which the jury answered, Yes. However, this issue is immaterial in view of the fact that in answer to special issue No. 1 the jury found that the true north line of appellants' tract of land is a line running west from the Henry Swearingen fence corner, as contended for by appellees. What we have just said disposes of appellants' points 10, 11, 12 and 13, which are overruled. Stroud v. Springfield, 28 Tex. 649; Stover v. Gilbert, 112 Tex. 429, 247 S.W. 841; Anderson v. Atlantic Oil Producing Co., Tex.Civ.App., 83 S.W.2d 418.

By points Nos. 14 to 21, inclusive, appellants complain of the action of the trial court in overruling certain exceptions to the court's charge, and in refusing to give requested special instructions with reference to priority of calls in the field notes, some of such requested instructions announce a correct rule of law as to the dignity to be given certain calls when the objects called for are found upon the ground or where their absence is satisfactorily accounted for, while some of the requested instructions are incomplete and do not pronounce a correct statement of the law. In a case of this character, where none of the objects called for in the field notes can be identified on the ground and the evidence not accounting for their absence or their previous location to that degree of certainty as to justify a court in fixing their location as a matter of law, all of such special requested instructions would have been on the weight of the testimony and would have been more confusing than helpful to the jury in determining the true location of the line inquired about.

Therefore such points are overruled. Appellants' remaining points present no error and are overruled.

Finding no error requiring a reversal of the judgment of the trial court, the same is affirmed.