## CARLTON v. MARSHALL.

No. 9683.

Court of Civil Appeals of Texas. Austin.
Jan. 28, 1948

Rehearing Denied Feb. 18, 1948.

John D. Reed and Goldsmith & Bagby, by Chester M. Fulton, all of Austin, for appellant.

Small & Small, by C. C. Small, Jr., of Austin, for appellee.

HUGHES, Justice.

This is a boundary suit and involves the location of the boundary between D. and W. Survey No. 102 on the north and D. and W. Survey No. 101 and W. B. Corwin Survey No. 189 on the south, all in Travis County.

Appellant, J. J. Carlton, is the owner of D. and W. Survey No. 102; appellee, George K. Marshall, is the owner of D. and W. Survey No. 101 and W. B. Corwin Survey No. 189.

For a better understanding of the facts, the relative position of the surveys mentioned, the surrounding surveys, location

of the area in dispute and of the issues presented, we insert the following map:

After all evidence was in, both parties requested discharge of the jury and submitted the cause to the trial court for decision. Judgment was for appellee. At the request of appellant the trial court made and filed the following conclusions of law:

"1. In view of the fact that the only locative calls in the field notes of the D. & W. R. R. Co. Survey 102 are for the lines and corners of the W. C. Penland Survey, and the surveyor appointed by the Court having located and identified such lines and corners without contradiction, it follows as a matter of law that the South line of

said Survey 102 must be located course and distance from the lines and corners of said Penland Survey.

"2. The D. & W. Survey 101 and W. B. Corwin Survey 189 field notes call to adjoin the D. & W. Survey 102 along its South line; therefore, the North lines of said Surveys 101 and 189 would be coincident with the South line of 102, placing the area in dispute within the surveys owned by Plaintiff and described in his Petition."

These conclusions are in accord with appellee's theory that Survey 102 must be located upon the ground by its calls for the senior W. C. Penland Survey on the east, the southeast corner of Survey 102 taking its position 384 varas south of a corner in the south line of the Penland Survey as called for in the field notes of Survey 102.

Appellant opposes this method of construction, contending that the location of the Penland Survey upon the ground is uncertain, but whether uncertain or not that Survey 102 should be constructed by the calls in the corrected field notes of D. and W. Survey 98, which call for the N. W. corner of Survey 102 to be 497 varas south of the N. E. corner of the Wm. Hensley Survey No. 534, a senior survey to the west of and adjacent to Survey 102. The location of the Hensley Survey on the ground is undisputed and constructing Survey 102 course and distance from its N. W. corner as indicated, the area in dispute would be within the limits of appellant's Survey 102.

D. and W. Surveys 101 and 102 are a part of a block of surveys made by John E. Campbell for the Dallas and Wichita Railroad Company. The original field notes for these surveys were filed in the General Land Office April 26, 1876, and recited that the various tracts were surveyed on April 21, 1876, at which time the Penland and Hensley Surveys had been located, the Hensley having been surveyed by James Kelley in 1874 and the Penland by John E. Campbell in 1869 and by James Pace in 1872.

None of the field notes for the D. and W. Surveys call for any natural or artificial mounds, monuments or objects to mark their lines or corners, except that the Hensley and Penland Surveys are called for as will be shown.

It appears that the D. and W. Surveys were laid or platted in from the west to east and that the Hensley Survey was reached or tied to before the Penland Survey was reached. In reverse order, that is from east to west, we find Campbell's construction of the involved surveys to be as follows:

*D. and W. Survey 101* was a square section beginning at the N. W. corner of D. and W. Survey 99; thence S. 60 E. 1900 vrs. to a corner; thence N. 30 E. 1900 vrs. to S. E. corner Sur. 102; thence N. 60 W. 1900 vrs. to S. W. corner Sur. 102; thence S. 30 W. 1900 vrs. to place of beginning. (Patented field notes.)

The patented field notes of Survey 102 read:

"Beginning at N. W. cor. of No. 101
"Thence S 60 E 2232 vs cor. on W line No. 104
"Thence N 30 E 384 vs cor. on S line W Penland sur.
"Thence N 45 W 936 vs W cor. W Penland sur.
"Thence N 45 E 950 vs N cor. W Penland sur.
"Thence S 45 E 950 vs E cor. W Penland sur.
"Thence N 30 E 600 vs S E cor No. 103
"Thence N 60 W 2491 cor. No. 98
"Thence S 30 W 1900 vs to beg."

The patented field notes of D. and W. Survey 103 are:

"Beginning at S E cor. No. 98
"Thence S 60 E 1900 vs to N E cor. No. 102
"Thence N 30 E 1929 vs corner
"Thence N 60 W 994 vs corner Heartt Sur.
"Then S 55 W 193 vs to S cor. of same
"Thence N 35 W 344 vs cor. on S W line same
"Thence N 60 W 504 vs cor. N E cor. No. 98
"Thence S 30 W 1900 vs to Beg."

This survey calling for the S. E. corner of D. and W. Survey 98 and Survey 102 apparently calling for the same corner, we note these facts concerning Survey 98. Its corrected field notes read:

"Beginning a S E cor of No. 97 Thence S 60 E 1778 vs to N E cor. of Hensley Survey

"Thence S 30 W 497 vs to N. W. cor of No. 102

"Thence *Thence* S 60 E 588 vs to S W cor of No. 103

"Thence N 30 E 1900 vs to N W cor of No. 103

"Thence N 60 W 2366 vs to N E cor of No. 97

"Thence S 30 W 1403 vs to beginning."

This survey was not patented upon these field notes but patent was issued upon field notes prepared by Nick Hornsby in 1942.

Appellant contends that since the Hornsby field notes do not in any manner correspond to the corrected field notes, the Hornsby field notes should be disregarded. We agree with this contention insofar as the correct location of Survey 102 is concerned.

It is to be noted that the field notes of Survey 102 do not call for the Hensley Survey and it is only by its call for Survey 98, which in turn calls for the Hensley, is Survey 102 tied to the Hensley. It is in this manner that appellant fixes the N. W. corner of Survey 102 as being S. 30 W. 497 varas from the N. E. corner of the Hensley, as recited in the corrected field notes for Survey 98.

Consistent with this theory appellant offered several witnesses who testified that for many years a stone mound known as the "Mill Stone Corner" had been recognized as the S. E. corner of Survey 102, such mound being located on the ground at the S. E. corner of the area in dispute.

Opposing this evidence surveyor witness Metcalfe testified that he found a rock mound at the N. E. corner of the area in dispute which he considered as probably placed by Campbell for the S. E. corner of Survey 102.

No mound or other object was called for in the field notes for Survey 102 at its S. E. corner.

Turning now to the Penland, otherwise known as the Buttery Survey, we find that on February 18, 1869, John E. Campbell, the same surveyor who located the D. and W. Surveys, made field notes for Survey No. 636 for John Buttery, which read:

"Beginning S 30 W 915 vrs and N 60 W 940 vrs from N W cor of Sur. No. 552, stone mound, from which a Spanish Oak 5 in. di. brs. S. 57 W 20 vrs.

"Thence N 45 W 950 vrs. stone mound from which a Spanish Oak 3 in. di. brs. S. 16 W 8 vrs.

"Thence S 45 W 750 vrs. Devil's Hollow 950 vrs. cor.

"Thence S 45 E. 950 vrs. cor.

"Thence N 45 E 250 vrs. Devil's Hollow 950 vrs. to place of beginning."

Buttery did not exercise his rights to the land. On October 22, 1872, James R. Pace filed field notes for Survey No. 636, which stated that they were "application of the field notes of Survey No. 636 of 160 acres to the certificate of W. C. Penland Preemption issued by A. R. Morris."

Orin E. Metcalfe, a licensed land surveyor, who was appointed by the court to make a survey of the premises in controversy and to report his action, under oath, to the court, stated in such report and as a witness for appellee testified, without objection, that a certificate made by John E. Campbell was on file in the General Land Office which stated that the Buttery and Penland Surveys were the same and not two separate surveys.

It was shown by Mr. Metcalfe that the Pace field notes would not cover any part of the land included in the Buttery Survey. Devil's Hollow was called for in both field notes but no creek is found upon the ground which would fit the calls in the Pace field notes.

Mr. Metcalfe, in locating the Penland Survey upon the ground according to the Campbell field notes, was aided by the work of two previous surveyors, John E. Wallace, in 1901, and M. V. Homeyer, in 1928, both of whom relocated this survey. In finding what he considered and took to be original corners, called for in the field notes, he was assisted by various persons living in the vicinity, including appellant. Inasmuch as appellant does not question this location, based upon the Campbell field notes, we will not detail the testimony upon this point but will state the conclusions and results reached by Mr. Metcalfe, whose testimony is undisputed.

At the N. E. corner of the Penland, Campbell called for a "stone mound from which a Spanish Oak 5 in. di. brs. S. 57 W 20 vrs."

Mr. Metcalfe found a large stone mound at the approximate course and distance for this corner, although the bearing tree was not found. That this tree had suffered the ravages of time is shown by the fact that Homeyer in 1928 called for this tree as being a stump and a new tree growing out of the same. The location of this large stone mound is shown at point 5 on the above map.

At the N. W. corner of the Penland, Campbell called for a stone mound from which a Spanish Oak 3 in. di. brs. S 16 W 8 vrs. A stone mound was found in running 24.5 vrs. beyond the field note distance of 950 vrs. at about the same course called for, which Mr. Metcalfe took to be the original N. W. corner. The bearing tree was not found. This is shown at point 6 on the above map. Rock mounds were also found at points 7 and 8 as shown on such map.

Devil's Hollow was found and its crossings by Mr. Metcalfe fit very closely the calls made in the Campbell field notes for the Penland.

Lines and corners of adjacent surveys may be the subject of calls as well as other objects and the validity of the survey called for is of no importance, the question being where the surveyor intended to place the subsequent tract. The weight to be given such calls depends largely upon the knowledge which the original surveyor had of the lines called for. 7 Tex. Jur., p. 178.

We are not concerned then with whether or not the legal location of the Penland Survey should be based upon the Pace or Campbell surveys, our inquiry being limited to what Campbell intended to do in locating D. and W. Survey 102.

When Campbell wrote the field notes for D. and W. Survey 102 he knew, or certainly is presumed to have known, his own ground location of the Penland made seven years earlier. Any doubt that Campbell may have intended to call for Pace's location of the Penland rather than his own is dispelled by his certificate that the Buttery and Penland Surveys were identical. Whether he was right or wrong in this statement is of no consequence.

We, therefore, conclude that the evidence is sufficient to support implied findings of the trial court (1) that Campbell intended to call for his own location of the Penland; and (2) that this location upon the ground has been ascertained as above indicated.

These findings and the rules of law stated above require us to overrule appellant's contentions that the calls in the field notes of D. and W. Survey 102 for the Penland should be disregarded because made upon conjecture and without regard to the true location of the Penland.

When effect is given, as it must be, to calls of D. and W. 102 for the Campbell location of the Penland, we find that such calls closely conform to the ground location of the Penland, there being only slight excess in distances: 963 varas in the S. line of the Penland against the D. and W. 102 call for 936 varas, 994.7 varas in the east line of the Penland against the D. and W. 102 call for 950 varas, 974.5 varas in the north line of the Penland against the D. and W. 102 call for 950 varas.

By reversing the calls in D. and W. Survey 102 its south line is fixed by its own field note calls, the S. E. corner being 384 varas S. of a corner in the S. line of the Campbell location of the Penland as held by the trial court. Petty v. Paggi Bros. Oil Co., Tex.Com.App., 254 S.W. 565.

The true location of the north line of D. and W. Survey 102 is not necessarily involved in this appeal. However, in locating this line, we would disregard the call for the N. W. corner of Survey 102 to be 497 varas S. of the N. E. corner of the Hensely upon application of these well established principles: (1) The call of 497 varas to a point not marked upon the ground by natural or artificial objects is a call for distance only, a call of subordinate dignity. (2) If any calls are to be disregarded, as few as possible should be eliminated. (3) Adherence to this call would create a large excess in Survey 102 (329 acres), which

should be avoided. (4) Real or apparent conflicts with surrounding surveys will be prevented.

The trial court having correctly located the south line of D. and W. Survey 102, its judgment is affirmed.

Affirmed.